Edgar **RODRIGUEZ**, Plaintiff,

v.

**TOWNSHIP OF HOLIDAY LAKES,
et al., Defendants.**

Civ. A. No. G–94–125.

United States District Court,
S.D. Texas,
Galveston Division.

Oct. 27, 1994.

Eileen C. Depew, Houston, TX, for plaintiff.

Barry Abrams, Abrams Scott & Bickley, Houston, TX, for defendants.

### ORDER ON MOTION FOR SUMMARY JUDGMENT

KENT, District Judge.

This is an employment-termination case in which Plaintiff Edgar Rodriguez ("Rodriguez") claims that the Township of Holiday Lakes ("Holiday Lakes") has violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.,* by refusing to pay him minimum wage or overtime compensation in his capacities as a patrol officer and Police Chief. Before the Court now is the Defendants' Motion for Partial Summary Judgment on the FLSA claim. For reasons described below, Defendants' Motion is DENIED in part and GRANTED in part.

*1. Background and Procedural History*

Holiday Lakes is a Type B[1] general-law Texas municipality with approximately 1,030 residents. It operates as a political subdivision of the State of Texas and is governed by a five-member City Council as well as a Mayor. Defendant Schroeder is the mayor of Holiday Lakes; Defendant Douglas is a City Council member. The township created a Police Department in September, 1991. Under the Holiday Lakes' Town Charter of September 17, 1991, both the Chief of Police and all police officers are dischargeable by an affirmative vote of a majority of the City Council with or without cause. (See Defendants' Motion for Summary Judgment, Instrument # 22, Exhibit A). In addition, the Town Charter also specifically states that "[n]othing in this ordinance ... shall be construed to give the chief of police [sic] or any police officer a property interest in and to their job, nor to create an expectation of future or continued employment by the Town." (See id.).

Plaintiff Rodriguez served as a patrol officer for the Holiday Lakes Police Department between November 19, 1991 and September 19, 1993. He was classified during that time as a "non-paid, full-time" employee who, like all the township's patrol officers, worked without pay. (See Defendant's Motion for Summary Judgment, Exhibit 1). By all accounts, this arrangement was made to the satisfaction of all parties involved in order that patrol officers could be classified as full-time police officers and therefore made eligible for employment as road-construction flagmen in neighboring Harris County. Beginning in July, 1993, however, Holiday Lakes began to pay its police officers the nominal sum of $5.00 per month when Harris County required that flagmen be paid, full-time police officers.[2]

On September 20, 1993, the City Council voted by a margin of 3–2 to hire the Plaintiff as the town's Chief of Police at the rate of

1. The record in this case provides conflicting evidence of Holiday Lakes' municipal status. While the City Secretary claims the town is a Class B municipality, some City documents suggest it is a class A municipality. (See Defendant's Motion for Summary Judgment, Instrument # 24, Exhibits 2 & 3).

2. The record is unclear whether this requirement was part of Harris County's criteria for flagmen before 1993 or not.

$400.00 per month for a minimum work-week of twenty hours. The minutes of the town meeting explicitly state that Plaintiff's hiring was for a probationary period of ninety days, pending Plaintiff's application for a Texas Intermediate Peace Officer's license. On November 1, 1992, prior to the end of the ninety-day probationary period, the City Council voted unanimously to terminate Rodriguez's employment as Police Chief for "want of confidence."

On January 18, 1994, Rodriguez filed suit against the Defendants in Brazoria County State District Court, claiming a violation of the Fourteenth Amendment Due Process Clause, FLSA, and a variety of state-law claims. Defendants removed the action to this Court. On April 13, 1994, Schroeder and Douglas moved for summary judgment on all of Plaintiff's claims. Conceding in his summary judgment response that he lacked evidence to pursue any of his claims against Mayor Schroeder, Plaintiff then moved to dismiss those claims voluntarily.

On May 31, 1994, this Court entered a preliminary Order on the parties' motions, ruling that (1) Plaintiff's Motion to Remand was temporarily denied, pending the Court's disposition of his federal claims; (2) all of Plaintiff's claims against Mayor Schroeder were dismissed with prejudice under Fed. R.Civ.P. 41; (3) Plaintiff's FLSA claims against Councilman Douglas were dismissed with prejudice under Fed.R.Civ.P. 41; and (4) Douglas' Motion for Summary Judgment was temporarily denied, pending the Court's disposition of Plaintiff's federal claims. In its May 31, 1994 Order, the Court invited Plaintiff to dismiss his Fourteenth Amendment claim, and the Plaintiff later agreed. Consequently, the Court dismissed Plaintiff's federal Constitutional claims, remanded his state-law termination claims to the Brazoria County state court, and retained jurisdiction solely over Plaintiff's FLSA claims. Thus, the *only* issue currently before the Court is Rodriguez's claim that Holiday Lakes violated provisions of the FLSA.

### 2. Standard for Summary Judgment

■ Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. A fact is material if its resolution in favor of one party might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A genuine issue of material fact exists if there is a genuine issue for trial that must be decided by the trier of fact. In other words, summary judgment should not be granted if the evidence indicates that a reasonable fact-finder could find in favor of the nonmoving party. *Id. See also Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

■ In ruling on a Motion for Summary Judgment, the Court must accept the evidence of the nonmoving party and draw all justifiable inferences in his favor. Credibility determinations, weighing of the evidence, and the drawing of reasonable inferences are left to the trier of fact. *Anderson v. Liberty Lobby, supra*, 477 U.S. at 255, 106 S.Ct. at 2513.

■ Under Fed.R.Civ.P. 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once this burden is met, the burden shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita, supra*, 475 U.S. at 585–87, 106 S.Ct. at 1355–56; *Leonard v. Dixie Well Serv. & Supply, Inc.*, 828 F.2d 291, 294 (5th Cir. 1987).

■ Where the moving party has met its Rule 56(c) burden, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts.... [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.' Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no *genuine issue for trial*." *Matsushita, supra*, 475 U.S. at 586–87,

106 S.Ct. at 1355–56 (quoting Fed.R.Civ.P. 56(e)) (emphasis in original).

### 3. Analysis

#### 1. Rodriguez's Volunteer Status

The Court is faced in this case with the difficult question of whether Rodriguez's affiliation with the Holiday Lakes Police Department brings him within the provisions of the FLSA. The precise nature of the case appears to be one of first impression, for neither party has directed the Court's attention to any guiding authority, and the Court has found no controlling case law directly addressing the facts presently before it. The Court begins, therefore, by considering the general purpose and construction of the Act itself.

The FLSA was passed by Congress in 1938 in an attempt to eliminate low wages and long hours and to correct conditions that were detrimental to the health and well-being of workers. *See Rutherford Food Corp. v. McComb*, 331 U.S. 722, 727, 67 S.Ct. 1473, 1475, 91 L.Ed. 1772 (1947). The purpose of the Act is thus remedial, and courts have long held that in light of its humanitarian intent, the Act's coverage should be construed liberally. *See, e.g., McComb v. Farmers Reservoir & Irr. Co.*, 167 F.2d 911 (10th Cir.1948), *aff'd.*, 337 U.S. 755, 69 S.Ct. 1274, 93 L.Ed. 1672 (1949); *Brennan v. Plaza Shoe Store, Inc.*, 522 F.2d 843 (8th Cir.1975) (stating that the Act should be construed to encompass the outer reaches of Congressional intent). In particular, the Supreme Court has directed courts considering FLSA claims to define "employer" and "employee" under the Act expansively and to construe exemptions from the FLSA's coverage narrowly and in favor of employees. *Tony & Susan Alamo Foundation v. Secretary of Labor*, 471 U.S. 290, 295–96, 105 S.Ct. 1953, 1958–59, 85 L.Ed.2d 278 (1985); *Goldberg v. Whitaker House Cooperative, Inc.*, 366 U.S. 28, 32, 81 S.Ct. 933, 936, 6 L.Ed.2d 100 (1961). That Court has clearly stressed that "[t]o extend an exemption to other than those plainly and unmistakably within its terms and spirit is to abuse the interpretative process and to frustrate the announced will of the people." *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392, 80 S.Ct. 453, 456, 4 L.Ed.2d 393 (1960).

One of the exemptions to the FLSA's mandate for minimum wages was added in 1985 [3] to exclude volunteers who perform services for states, political subdivisions like municipalities, or interstate agencies. 29 U.S.C. § 203(e)(4)(A) provides:

> The term "employee" does not include any individual who volunteers to perform services for a public agency which is a State, a political subdivision of a State, or an interstate governmental agency, if—
>
> (i) the individual receives no compensation or is paid expenses, reasonable benefits, or a nominal fee to perform the services for which the individual volunteered; and
>
> (ii) such services are not the same type of services which the individual is employed to perform for such public agency.

Unfortunately, the FLSA does not provide a definition of "employee" beyond the remarkably circular statement that "the term 'employee' means any individual employed by an employer." 29 U.S.C. § 203(e)(1). The Supreme Court, however, has provided a practical test for determining whether a specific individual is an "employee" for FLSA purposes by stating that "employees are those who as a matter of economic reality are dependent upon the business to which they render service." *Bartels v. Birmingham*, 332 U.S. 126, 130, 67 S.Ct. 1547, 1550, 91 L.Ed. 1947 (1947). Likewise, that Court has defined "volunteer" (which the FLSA does not define at all) as "an individual, who, 'without promise or expectation of compensation, but solely for his personal purpose or pleasure, worked in activities carried on by other persons either for their pleasure or profit.'" *Tony & Susan Alamo Foundation, supra*, 471 U.S. at 295, 105 S.Ct. at 1958 (quoting *Walling v. Portland Terminal Co.*, 330 U.S. 148, 152, 67 S.Ct. 639, 641, 91 L.Ed. 809 (1947)).

With these definitions as its guide, this Court considers whether Rodriguez was a volunteer while he worked as an unpaid patrol officer, a question which is a matter of

---

**3.** See Pub.L. 99–150, § 4(a)(2) (1985).

law to be determined by the Court. *Castillo v. Givens,* 704 F.2d 181, 185 (5th Cir.), *cert. denied,* 464 U.S. 850, 104 S.Ct. 160, 78 L.Ed.2d 147 (1983). Plaintiff argues that he should not be classified as a volunteer because he was never classified as one by the township; because he was coerced into working without pay for Holiday Lakes; and because he did not act for civic, charitable, or humanitarian reasons.

■ The Court begins with Plaintiff's second ground for arguing that he was not a volunteer for. FLSA purposes. As stated above, Plaintiff Rodriguez worked full time without pay for Holiday Lakes in order to obtain additional employment as a road-construction flagman with Harris County. While the Court remains puzzled by what seems to be a peculiar and strikingly inefficient way of making of living, all parties agree that this arrangement was the basis for Holiday Lakes' relationship with Rodriguez and that both the town and the Plaintiff knowingly acted with this understanding. Thus, both Plaintiff and the town knowingly and agreeably consented to the township paying the officers $5.00 per month in 1993 when Harris County required that its flagmen be *paid,* as well as full-time, police officers. (See Defendants' Motion for Summary Judgment, Exhibit 2).

Remarkably, Plaintiff cites this arrangement as evidence *for* his status as an employee, claiming that he was "coerced" into working for Holiday Lakes because the township knew that he could make a living only through this arrangement. (See Plaintiff's Evidence, at 4). The Court finds this argument to be, at best, utterly unconvincing; at worst, it is disingenuous and downright preposterous. Plaintiff's claim of "coercion" is unsupported by even the slimmest thread of evidence and is a bald attempt to bring him under the coercion exception to volunteer exemption stated in 29 C.F.R. § 553.101(c). That section states that "[i]ndividuals shall be considered volunteers only where their services are offered freely and without pressure or coercion, direct or implied, from an employer." Plaintiff has presented *no* evidence *whatsoever* suggesting that his services to Holiday Lakes were anything other than freely and willingly given by him. The fact that other employers offered Rodriguez employment as a security officer because of his ongoing status as a municipal police officer is not tantamount to "coercion" by Holiday lakes to provide those police services free of charge. In addition, Plaintiff has presented *no* evidence suggesting that the *only* work he could obtain was that of a flagman for the City of Houston or that Holiday Lakes had such control over his employment options that all other opportunities would have been foreclosed had he failed to work for the township without pay.

Plaintiff, however, makes two other claims that the Court will consider together. First, Plaintiff argues that he should not be classified as a volunteer because he did not subjectively intend to provide his services for "civic, charitable, or humanitarian" reasons, as provided for in 29 C.F.R. § 553.101(a). That regulation states that "[a]n individual who performs hours of service for a public agency for civic, charitable, or humanitarian reasons, without promise, expectation or receipt of compensation for services rendered, is considered to be a volunteer during such hours." Instead, Plaintiff argues, he was motivated by the opportunity to obtain employment with Harris County and thus does not fall within the scope of § 553.101(a).

■ Plaintiff's argument places this Court in the difficult position of having to interpret the definition of "volunteer" in 29 C.F.R. § 553.101(a) in the face of two equally implausible constructions: either a man who worked full time without pay for two years *in order* to obtain yet another job in a different county is a "volunteer," or one who worked full time without pay for the same period—without once complaining that he was not being paid—is *not* a "volunteer." In doing so, the Court must be guided by three principles. First, it is well established that regulations by the Administrator of the Wage and Hour Division of the Department of Labor are generally valid and binding on courts. *See, e.g., Craig v. Far West Engineering, Co.,* 265 F.2d 251, 256 (9th Cir.), *cert. denied,* 361 U.S. 816, 80 S.Ct. 57, 4 L.Ed.2d 63 (1959); *Gilreath v. Daniel Funeral Home, Inc.,* 421 F.2d 504, 509 (8th Cir.1970). The Fifth Cir-

cuit has been very clear that a regulation like § 553.101(a) that is "adopted pursuant to an express delegation of authority by Congress, becomes in effect a part of the statute and has the force and effect of law." *Wirtz v. Keystone Readers Service, Inc.*, 418 F.2d 249, 260 (5th Cir.1969).[4] Second, exemptions to the FLSA are to be narrowly construed in favor of employees. *Nichols v. Hurley*, 921 F.2d 1101 (10th Cir.1990).[5] And third, a court must draw all justifiable inferences in favor of the nonmovant when deciding whether to grant summary judgment.

With these guidelines in mind, the Court finds that Plaintiff Rodriguez was not a volunteer for FLSA purposes. The Defendants argue that Plaintiff's subjective motivation in working for Holiday Lakes is not controlling here. However, the plain language of 29 C.F.R. § 553.101(a) clearly suggests that motivation *is* a factor in determining an individual's volunteer status: a "volunteer" is one who performs service "for civic, charitable, or humanitarian reasons." In addition, § 553.104(b), which provides an illustrative list of work that qualifies under the volunteer definition, is explicitly made subject to the provision that services are performed on a volunteer basis only "when so motivated." 29 C.F.R. § 553.104(b). The Defendants seem to interpret this language as requiring only that the organization for which one works have a civic or humanitarian purpose. (See Defendant's Motion for Summary Judgment, at 10). However, the language of § 553.101(a) clearly mandates that the individual in question be motivated by such purposes. In this case, it is undisputed that Rodriguez did not act out of any of these motivations but was guided solely by the self-

interested, though peculiar, intention of obtaining employment in Harris County.

This Court, however, does not decide this issue solely on the question of Rodriguez's motivation. Subpart B of 29 C.F.R., ch. 5, which contains the Administrator's construal of "volunteer" for FLSA purposes, clearly evidences an intent to limit that status to a common-sense understanding of individuals engaged in activities that all parties involved clearly understand to performed on a volunteer basis. § 553.104(b) states:

> Examples of services which might be performed on a volunteer basis *when so motivated* include helping out in a sheltered [sic] workshop or providing personal services to the sick or the elderly in hospitals or nursing homes; assisting in a school library or cafeteria; or driving a school bus to carry a football team or band on a trip. Similarly, individuals may volunteer as firefighters *or auxiliary police*, or volunteer to perform such tasks as working with retarded or handicapped children or disadvantaged youth programs as camp counselors, soliciting contributions or participating in civic or charitable benefit programs and volunteering other services needed to carry out charitable or educational programs. (emphasis added)

Admittedly, this list is illustrative and not definitive, but none of the Administrator's examples of volunteers suggests that full-time work—especially when undertaken without civic motivation—qualifies as "volunteer" work where only one party understands the work to be voluntary. Nursing homes, hospitals, and disadvantaged-youth camps are all organizations that expect and routinely receive volunteer work by individuals. In fact, the specific inclusion of "auxiliary po-

---

4. The Administrator's definition of "volunteer" in § 553.101(a) would thus seem to be the language binding on this Court. The definition of "volunteer" provided by the Supreme Court in *Tony & Susan Alamo Foundation, supra,* 471 U.S. at 295, 105 S.Ct. at 1958, which does *not* contain the "civic, charitable, or humanitarian" language, was formulated prior to the Administrator's regulation in 1987. Were this Court bound only by the *Alamo Foundation* language, it would find that the Supreme Court's provision for "personal purpose" in a volunteer's motivation would allow this Court to find that Rodriguez *was* a volunteer for Holiday Lakes.

5. The Fifth Circuit has noted that interpreting the exemptions to the FLSA is made a more complex task by the complete absence of any principle unifying or underlying them; the exemptions appear to have been added to the FLSA as a politically expedient device to ensure the Act's passage. *Brennan v. Texas City Dike & Marina, Inc.*, 492 F.2d 1115, 1117 (5th Cir.), *cert. denied*, 419 U.S. 896, 95 S.Ct. 175, 42 L.Ed.2d 140 (1974).

lice" strongly suggests that the Administrator intended *not* to include full-time, regular police work under "volunteer" status.

It is significant in this regard that the township of Holiday Lakes hired Rodriguez after it disbanded its former practice of using part-time deputy marshals to provide security for the town. (See Defendants' Motion for Summary Judgment, Exhibit 2). This suggests that the town moved from a volunteer, auxiliary-type police force as contemplated under 29 C.F.R. § 553.104(b) to a full-time, though unpaid, organization that does not fall under volunteer status.

This certainly accords with the understanding of the town itself. The Plaintiff was required to complete an employment application for the job of patrol officer. (See Plaintiff's Evidence, Exhibit A). Councilman Douglas states that the police officers were "employees" of the town and that they were subject to the town's Personnel Policies Manual. (See Plaintiff's Evidence, Exhibit C). That manual states that "employee" and "personnel" are synonymous terms and that any employee—including patrol officers— could be asked to give up any outside employment that interferes with the individual's work for Holiday Lakes. In addition, Councilman Douglas states that the City Council is entrusted with the "hiring and firing of its police officers." (Defendants' Summary Judgment Motion, Exhibit 4). The Court does not believe that this explicit use of language commonly associated with an ordinary employment relationship suggests that a volunteer status was ever contemplated by City Ordinance 91–136, which created the Holiday Lakes Police Department.

▮ The Plaintiff argues that the failure of Holiday Lakes to classify him as a "volunteer" determines his status as an employee. In one sense, the Plaintiff is clearly wrong. Courts routinely look beyond the labels employers use and apply the "economic reality test" in FLSA cases to determine the employment status of an individual. This

test is designed to gauge the individual's economic dependence on the employer, and it includes: (1) the degree of control the alleged employer exercises over the worker; (2) the worker's opportunity for loss or gain; (3) the worker's investment in facilities and equipment; (4) the permanence of the employment relationship; and (5) the skill required to perform the job. *Trustees of Sabine Area Carpenters' Health & Welfare Fund v. Don Lightfoot Home Builder, Inc.,* 704 F.2d 822, 825 (5th Cir.1983).

This test, however, is designed to distinguish an employee from an *independent contractor,* a distinction that presupposes a real economic exchange between the parties which can be gauged. In the volunteer area, however, there is no economic relation to measure. As Mr. Rodriguez's situation shows, no money exchanges hands, and thus the very purpose of the economic reality test—to measure and balance the competing economic realities involved in an employee/independent contractor distinction—completely fails.

▮ The Court believes, therefore, that the "economic reality test" is inapplicable in trying to distinguish an employee from a volunteer where no payments at all are made between the parties. The Court is unwilling to formulate its own test in this area, but it suggests that given the emphasis by the Administrator on the motivation of a Plaintiff like Mr. Rodriguez, the Court should give at least some weight to those factors suggesting that an employment rather than a volunteer relationship was contemplated by the parties. Thus, the fact that a City Councilman states that Rodriguez was an "employee," that he was subject to the provisions of the employee's policy manual (including workers' compensation, social security coverage, sick leave, and vacation time), and that Rodriguez filled out an employment application are objective indicia that an employment relationship was contemplated by the township.[6]

---

6. City Ordinance No. 91–136, which authorizes the hiring of police officers like the Plaintiff, also provides that all officers are to be paid "compensation" each month out of the general funds of the township. (Defendants' Motion for Summary Judgment, Exhibit A). However, the Court

does not find this necessarily relevant to the present analysis. As the township's later payment of $5.00 per month shows, this "compensation" could be merely nominal and thus clearly within the "volunteer" status outlined by the Administrator in 29 C.F.R. § 553.106.

This Court finds that such behavior and policies are inconsistent either with a common-sense notion of "volunteer" or with the Administrator's definition of that term in 29 C.F.R. § 553.101. Acting under the twin requirements of construing exemptions to the FLSA narrowly and in favor of employees and of construing all reasonable inferences in favor of the nonmovant when considering summary judgment, the Court finds that it cannot hold for summary judgment purposes that Plaintiff Rodriguez was a volunteer under the FLSA when he worked full-time for Holiday Lakes as a non-paid patrol officer.

### 2. Plaintiff's § 207(a) Overtime Claim

█ Defendants also argue that Plaintiff Rodriguez's claim for overtime payments under 29 U.S.C. § 207(a) is barred by an exemption to the FLSA's overtime pay requirements.[7] 29 U.S.C. § 213(b)(20) provides that the FLSA overtime requirements do not apply to any employee employed in a law enforcement agency that employs fewer than five employees in a workweek. Like the exceptions for the FLSA minimum wage requirements, exemptions to the overtime pay requirements are also to be narrowly construed against employers trying to assert them. *Texas City Dike & Marina, Inc.,* supra, 492 F.2d at 1117, and an employer who asserts such an exemption at all times bears the burden of proof that the exemption applies. *Dole v. Mr. W Fireworks, Inc.,* 889 F.2d 543, 545 (5th Cir.1989), *cert. denied,* 495 U.S. 929, 110 S.Ct. 2167, 109 L.Ed.2d 497 (1990).

█ The Court believes that the Defendants in this case have not born their burden of proof of demonstrating why summary judgment is appropriate on this issue. Defendants claim that during the relevant periods, all but one of the members of the Holiday Lakes Police Department were unpaid "volunteers" and that the § 213(b)(20) exemption therefore applies. (Defendants' Motion for Summary Judgment, at 11). As the Court's analysis above shows, however, de-

termining whether individual members are volunteers or employees must be decided on an individual basis, and the Court has absolutely no information about the specific number of officers involved with the Holiday Lakes Police Department, the length of their stay with the Department, their identities, the circumstances surrounding their employment, or their individual motives relevant to § 553.101(a)'s definition of "volunteer."

The question of whether the patrol officers in the Holiday Lakes Police Department are volunteers or employees is clearly a material fact in this litigation: if they are volunteers, the Plaintiff is not entitled to overtime compensation; if they are employees, he is. Thus, given that courts must construe § 213's exemptions narrowly and in favor of an employee, the Court does not believe that summary judgment on this issue is appropriate for the Defendants at this point.

### 3. Plaintiff's FLSA Claims as Police Chief

█ In addition to his FLSA claims for work done as a patrol officer, Plaintiff Rodriguez also claims violations of the FLSA for the few weeks he worked as Holiday Lakes' Police Chief. Plaintiff was hired to work a minimum of twenty hours a week for the sum of $400.00 per month. Defendants argue that the Court should grant summary judgment against Plaintiff's claims because in his role as Police Chief, Rodriguez is subject to the "personal staff" exemption to the FLSA. 29 U.S.C. § 203(e)(2)(C)(i) & (ii)(II) provide that an "employee" of a public agency does not include one who "is selected by the holder of such an [elective] office to be a member of his personal staff." Although the FLSA itself does not define what is meant by "personal staff," it is well established that courts considering personal staff exemptions to that statute may be guided by cases interpreting an analogous exemption to Title VII. *Nichols v. Hurley,* 921 F.2d 1101, 1103 (10th Cir.1990). Like the other exemptions to the FLSA, the personal staff exemption must be

7. Plaintiff's Original Complaint seems to claim overtime payment both for his work as a patrol officer and in his capacity as Police Chief. Because of the Court's ruling on this matter, Rodri-

guez's claim for overtime compensation in both capacities will be considered as one issue at this point.

narrowly construed. *Clark v. Tarrant County*, 798 F.2d 736, 742 (5th Cir.1986).

■ In a leading case on the personal exemption to Title VII's requirements, the Fifth Circuit has outlined a list of six factors to consider in deciding whether the exemption applies. These factors include:

(1) whether the elected official has plenary powers of appointment and removal;

(2) whether the person in the position at issue is personally accountable to only that elected official;

(3) whether the person in the position at issue represents the elected official in the eyes of the public;

(4) whether the elected official exercises a considerable amount of control over the position;

(5) the level of the position within the organization's chain of command; and,

(6) the actual intimacy of the working relationship between the elected official and the person filling the position.

*Teneyuca v. Bexar County*, 767 F.2d 148, 151 (5th Cir.1985). This list is nonexhaustive, and courts must look to the "nature and circumstances" of each employment relationship. *Id.*[8]

■ Having considered the *Teneyuca* factors in this case, the Court finds that, as in *Teneyuca* itself, summary judgment should be granted in favor of the Defendants on this issue. Defendants have clearly met their summary judgment burden on at least four of the six *Teneyuca* factors. First, Holiday Lakes City Ordinance 91–136 gives the City Council plenary power to hire or to remove the Police Chief "with or without cause." (Defendants' Motion for Summary Judgment, Exhibit A). Secondly, courts that have considered the FLSA personal staff exemption have held that where an employee serves at the pleasure of an elected official, a high level of personal accountability to that official can be presumed. *McBee v. Jim Hogg County*, 703 F.2d 834, 840 (5th Cir. 1983), *vacated and remanded on other grounds on reh'g en banc*, 730 F.2d 1009 (5th Cir.1984); *Nichols, supra*, 921 F.2d at 1109. Defendants have submitted the affidavit testimony of City Council member Douglas stating that the Police Chief is accountable *solely* to the City Council; indeed, the township's Police Chief is regularly required to report to the Council on a broad range of law enforcement matters. (See Defendants' Motion for Summary Judgment, at 13). Taken together with the Council's exclusive power to fire the Police Chief, the Court finds that a high degree of accountability can be presumed in this case.

Thirdly, the Defendants have also submitted evidence showing the Police Chief's high position in the organizational chain of command. Although the Plaintiff has submitted an organizational chart of the town indicating that the Police Chief ranks below a Police Department Liaison, Defendants have shown that this Liaison Officer was, in fact, City Council member Douglas. (See Plaintiff's

---

**8.** As a preliminary matter, the Court notes that the language of FLSA § 203(e)(2) exempts individuals who are employed by "the holder of ... an office to be a member of *his* personal staff" (emphasis supplied). This language seems to be intended to cover employees of individual office holders, not persons who have been hired by collective bodies like a City Council. This intention is born out by a reading of FLSA personal staff exemption cases, the overwhelming majority of which involve suits by plaintiffs against specific, individual defendants like sheriffs or District Attorneys. *See, e.g., Nichols, supra*, 921 F.2d at 1102; *Owens v. Rush*, 654 F.2d 1370 (10th Cir. 1981). As one court has pointed out, the FLSA itself does not define what is meant by a "personal staff," but a common-sense, dictionary meaning of the word "personal" clearly indicates something "of or pertaining to a *particular* person." *Wall v. Coleman*, 393 F.Supp. 826, 829 (S.D.Ga.1975) (quoting Webster's New International Dictionary, 2d ed.)

Nevertheless, neither party in this case has argued that the personal staff exemption should be limited to individual office holders. At least one other court has held that a personal staff exists between an individual and a group. *Clark v. Tarrant County, Tex.*, 608 F.Supp. 209, 214 (N.D.Tex.1985), *aff'd in part and rev'd in part*, 798 F.2d 736 (5th Cir.1986). In *Clark*, individual probation officers were held to be part of the personal staffs of the state's elected judiciary. While considering other grounds of appeal, the Circuit gave no opinion on the merits of the particular claim in question. This Court, therefore, does not believe that it should find the absence of a personal staff exemption merely on the fact that Plaintiff was hired by an elected group rather than an elected individual.

Evidence, Exhibit F; Defendants' Motion for Summary Judgment, Exhibit 4). The Liaison Officer's role appears to be wholly that of channelling communications between the City Council and the Police Chief, and he is in no way delegated with the authority to control the Police Department's operations, to dictate the policy or operations of the Police Department, or to set the wages of its members. (Defendants' Motion for Summary Judgment, Exhibit 4). Thus, although 29 C.F.R. § 553.11(b) excludes from the personal staff exemption employees who are directly *supervised* by someone other than the elected official, even though they may have been selected by the official, the regulation does not prevent the Holiday Lakes' Police Chief from falling within the exemption: he is *not* "supervised" by the Liaison Officer, and that officer was, in fact, himself one of the elected officials contemplated by the personal staff exemption. The Court is mindful that Holiday Lakes is a township of only slightly more than 1,000 individuals. This is not, therefore, a case in which a large organizational hierarchy has been interposed between a City Council and a Police Department, as might be found in much larger communities. Instead, the liaison officer here is merely an extension of the Council itself, a position seemingly designed to facilitate communications between the respective parties and in no way supervises or controls the operations of the Police Chief. Thus, the Court finds that the Defendants have born their summary judgment burden in showing the Police Chief's high position in the organizational chain of command.

Fourthly, the Defendants have clearly shown that the City Council exercises a considerable amount of control over the Police Chief's position. In fact, as the evidence mentioned above shows, the Council exercises *exclusive* control over the Chief. Councilman Douglas has clearly stated that the City Council has at all times controlled the policy concerning the township's police operations, has exclusive power to hire and fire all Police Department members, and has sole authority to set the Department's wages. (Defendants' Motion for Summary Judgment, Exhibit 4).

As for the remaining two *Teneyuca* factors, the Court finds that Defendants' have not submitted evidence sufficient to shift the summary judgment burden of production to the Plaintiff. The Defendants claim that the Police Chief is the most visible township employee and that he therefore represents the City Council in the eyes of the public. While the Court is aware that the extremely small nature of the Holiday Lakes community makes such a claim more plausible than it would otherwise be, Defendants have not argued this point in terms of the community's size, and the Court has no evidence before it of how specific community members actually regard the Police Chief in relation to the City Council.

Secondly, the Defendants do not directly argue that the Police Chief enjoys an "intimacy of working relationship" with the City Council. Although the Defendants have presented evidence sufficient to show the Council's control over the Chief, as well as his accountability to the Council, they have not directly argued that the working relationship in question is "intimate," as the final *Teneyuca* factor describes it. Because this Court is required to draw all reasonable inferences in favor of the nonmoving party, it finds that the Defendants have not shifted the burden of production to the Plaintiff on this point.

In deciding this issue, the Court is aware that the *Teneyuca* factors are not *exclusive* in determining whether the personal staff exemption exists, and the Fifth Circuit has not indicated how these factors are to be weighed in such an analysis. In this case, however, the Court is guided by the *Teneyuca* disposition itself. In that case, the Defendant only submitted evidence on the first three factors that suggest that the personal staff exemption should apply. Plaintiffs failed to respond properly to the Defendant's motion, and the Court granted summary judgment for Defendant. *Teneyuca, supra,* 767 F.2d at 152–153; *see also, Nichols, supra,* 921 F.2d at 1111 (granting summary judgment under identical procedural circumstances).

The Plaintiff in this case has also failed to respond to Defendants' Motion for Summary Judgment and has thus failed to meet its

burden of production on the four factors mentioned above. Although the Plaintiff submitted evidence on his FLSA claim prior to the Defendants' motion, this does not relieve him of the responsibility under Fed. R.Civ.P. 56(e) of coming forward with evidence showing that a genuine issue for trial exists when a Defendant has born his summary judgment burden. The Defendants' motion that the Plaintiff was exempt from the FLSA during the time he served as the Holiday Lakes' Police Chief is therefore **GRANTED.**

### *4. Conclusion*

For all of the reasons stated above, it is **ORDERED** that Defendants' Motion for Summary Judgment against Plaintiff's claims under the FLSA are **DENIED** insofar as it pertains to Plaintiff's claims for back pay and overtime compensation for his activities as a patrol officer for Holiday Lakes, and is **GRANTED** in relation to Plaintiff's functions as Police Chief. Plaintiff's claims for back pay and overtime compensation for his work as Police Chief are hereby **DISMISSED WITH PREJUDICE.** All other relief not specifically granted is also hereby **DENIED.** All parties are further **ORDERED** to file no further pleadings on any of these issues with this Court, including motions to reconsider and the like. Instead, parties are instructed to seek any further relief to which they feel themselves entitled in the United States Court of Appeals for the Fifth Circuit, as may be appropriate in due course.

**IT IS SO ORDERED.**