**Brian TODARO, et al., Plaintiff,**

v.

**TOWNSHIP OF UNION, Defendant.**

**Civil Action No. 97–4875.**

United States District Court,
D. New Jersey.

Jan. 21, 1999.

Thomas A. Clark, Cureton Caplan & Clark, Mt. Laurel, NJ, for plaintiff.

John C. Marcolini, Weiner Lesniak, Parsippany, NJ, for defendant.

### *OPINION*

WOLIN, District Judge.

This matter comes before the Court on cross-motions for summary judgment filed by plaintiffs Brian Todaro, et al., and defendant Township of Union ("Township"). In an Opinion and Order dated November 17, 1998 (as amended November 30, 1998) ("Todaro I"), the Court previously denied plaintiffs' motion for summary judgment on count one of plaintiffs' amended complaint, and granted defendant's motion for summary judgment as to count two of the amended complaint. The Court reserved judgment on defendant's motion as to count one of the amended complaint pending the completion of limited discovery.

The Court has decided this matter pursuant to Federal Rule of Procedure 78. For the reasons set forth herein, defendant's motion for summary judgment on count one of the amended complaint is granted.

## BACKGROUND

The Court relies upon and incorporates herein the background facts previously detailed in Todaro I.

In Todaro I, the Court held that under the existing standards for and definition of "employee," it could not determine whether plaintiffs constituted employees for summary judgment purposes. The Court also deferred any conclusion as to whether plaintiffs, all of whom served as special law enforcement officers ("SLEOs") for defendant, constituted "volunteers" when they performed hours of unpaid town duty subsequent to October 2, 1995.[1] A finding that plaintiffs constituted volunteers would exempt them from the minimum wage provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq. *See* 29 U.S.C. § 203(e)(4)(A).

In Todaro I, the Court directed the parties to conduct discovery limited to the issue of why plaintiffs continued to perform town duty subsequent to October 2, 1995. In accordance with the Court's Order, ten of the eleven plaintiffs remaining in the case were deposed on December 9 and 10, 1998. Plaintiffs and defendant have submitted supplemental briefs and declarations addressing this question.

## DISCUSSION

The only remaining issue before the Court is defendant's motion for summary judgment on the first count of the amended complaint, on the grounds that plaintiffs constituted volunteers when performing town duty subsequent to October 2, 1995, and therefore do not fall under the provisions of the FLSA. After evaluating the parties' supplementary submissions, the Court has concluded that plaintiffs constitute volunteers as a matter of law. The Court will therefore grant defendant's motion for summary judgment on the first count of the amended complaint.

1. On October 2, 1995, the police chief of the Township issued a directive that SLEOs would no longer be eligible to accept jobs-in-blue positions (for which wages are paid by

### A. Summary Judgment Standard

Summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment has the burden of demonstrating that there is no genuine issue as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### B. Construction of the FLSA

■ The Court duly notes that the FLSA is a remedial statute which "must not be interpreted or applied in a narrow, grudging manner," and that exemptions from the FLSA "are to be narrowly construed against the employers seeking to assert them." *Krause v. Cherry Hill Fire District 13*, 969 F.Supp. 270, 274 (D.N.J. 1997) (quoting *Tennessee Coal, Iron & R.R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 597, 64 S.Ct. 698, 88 L.Ed. 949 (1944) and *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392, 80 S.Ct. 453, 4 L.Ed.2d 393 (1960)).

### C. Definition of Volunteer

The Court noted in Todaro I that the issue of whether an individual should be classified as a volunteer or as an employee has been held to be a question of law for the determination of the court. *See Martin v. Selker Bros., Inc.*, 949 F.2d 1286, 1292 (3d Cir.1991); *Donovan v. DialAmerica Marketing, Inc.*, 757 F.2d 1376, 1381, n. 2 (3d Cir.), *cert. denied, DialAmerica Marketing, Inc. v. Brock*, 474 U.S. 919, 106 S.Ct. 246, 88 L.Ed.2d 255 (1985); *Henderson v. Inter–Chem Coal Co., Inc.*,

various private entities seeking security or similar services) that they had previously been permitted to accept after performing four hours of unpaid town duty per week.

41 F.3d 567, 571 (10th Cir.1994); *Rodriguez v. Township of Holiday Lakes*, 866 F.Supp. 1012, 1017–18 (S.D.Tex.1994).

As discussed in Todaro I, the FLSA specifically excludes from the definition of "employee"

> any individual who volunteers to perform services for a public agency which is a State [or] a political subdivision of a State ... if—
>
> > (i) the individual receives no compensation or is paid expenses, reasonable benefits, or a nominal fee to perform the services for which the individual volunteered; and
> >
> > (ii) such services are not the same type of services which the individual is employed to perform for such public agency.

29 U.S.C. § 203(e)(4)(A).

The applicable regulation promulgated by the Department of Labor defines a "volunteer" to be "[a]n individual who performs hours of service for a public agency for civic, charitable, or humanitarian reasons, without promise, expectation or receipt of compensation for services rendered...." 29 C.F.R. § 553.101(a) (1998).[2] A volunteer's services must be "offered freely and without pressure or coercion, direct or implied, from an employer." 29 C.F.R. § 553.101(c). Volunteers may receive "reasonable benefits" from the public agency for which they volunteer. 29 C.F.R. § 553.106(d).

In Todaro I, the Court held that plaintiffs satisfied the second part of the regulatory definition of "volunteer"; namely, that plaintiffs performed town duty subsequent to October 2, 1995, "without promise, expectation, or receipt of compensation." As

noted in Todaro I, the Township of Union Special Police Rules and Regulations clearly defined town duty to be "public safety and law enforcement functions" performed by a SLEO for which a SLEO "receives no compensation." What remains for the determination of the Court is whether the motivation of the plaintiffs in continuing to perform town duty was such that they constitute volunteers as a matter of law.

### ANALYSIS

The broad question before the Court is whether plaintiffs' status is such that they fall within the intended scope of FLSA protections. More specifically, the Court must determine whether the situation before the Court is an example of the permissible provision of benefits to volunteers as a perquisite, or the impermissible use of benefits as an inducement to obtain "volunteer" services while avoiding applicable minimum wage laws.

■ The Court begins from the premise that the terms "independent contractor," "employee," and "volunteer" are intended to be both comprehensive[3] and mutually exclusive for purposes of applying the FLSA; that is, an individual who provides services for an agency must fall into one but only one of these categories. There is no category for "quasi-volunteer" or "semi-employee."

Congress did not intend the minimum wage provisions of the FLSA and the applicable definitions of "employee" and "volunteer" to have the undesired side effect of discouraging volunteerism. *See* 29 C.F.R. § 553.101(b). However, if the definition of "volunteer" provided in 29 C.F.R.

---

**2.** *Cf. Tony & Susan Alamo Foundation v. Secretary of Labor*, 471 U.S. 290, 295, 105 S.Ct. 1953, 85 L.Ed.2d 278 (1985), in which the Supreme Court defined volunteer as "an individual who, without promise or expectation of compensation, *but solely for his personal purpose or pleasure*, work[s] in activities carried on by other persons either for their pleasure or profit." (Emphasis added.) Note that the regulation at 29 C.F.R. § 553.101 was insti-

tuted in 1987, subsequent to the *Alamo Foundation* decision.

**3.** The Court notes there may be additional narrowly defined categories of persons who provide services in addition to the three specified, such as "trainee" or "workfare recipient," but such categories are not implicated here.

§ 553.101(a) is applied literally, an untenable logical paradox emerges. It is readily apparent that a situation could exist in which an individual thinks of himself as a volunteer, is considered to be a volunteer by the agency for which he provides services, and yet does not qualify as a volunteer under the regulatory definition. The definition fails to reflect the fact that a person who volunteers services may be motivated, either in whole or in part, by reasons of "personal purpose or pleasure" (see footnote 2, *supra*) that are other than "civic, charitable, or humanitarian." Among myriad other motivations that do not qualify under 29 C.F.R. § 553.101(a), a person may volunteer in order to acquire employment contacts, gain experience, or obtain school credit.

For instance, a law student who provides services as a judicial intern for a judge may consider herself a volunteer and may be thought of as a volunteer, with no promise or expectation of monetary compensation, but may freely admit that she is motivated solely by the desire to obtain personal edification, legal experience, and resume-fodder (or even a compensated position with the judge). Such an individual is not motivated by "civic, charitable, or humanitarian purposes," but it offends rationality to suggest that this individual is an employee rather than a volunteer, and is thus entitled to minimum wages under the FLSA. The protections provided by the FLSA, while broad in scope, were not intended to sweep everyone under the minimum wage umbrella. In fact, the FLSA was passed by Congress in an "effort to eliminate low wages and long hours ... [and] conditions that were detrimental to the health and well-being of workers." *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 727, 67 S.Ct. 1473, 91 L.Ed. 1772 (1947).

■ The Court is convinced that Congress and the Department of Labor could not have intended this obviously absurd result. Accordingly, the Court has concluded that the definition of "volunteer"

must be applied in a common-sense way that takes into account the totality of the circumstances surrounding the relationship between the person providing services and the entity for which the services are provided, in light of the goals of the FLSA. *See Rodriguez*, 866 F.Supp. at 1019 (noting that 29 C.F.R. § 553.104(b) "clearly evidences an intent to limit that status [volunteer] to a common-sense understanding of individuals engaged in activities that all parties involved clearly understand to [be] performed on a volunteer basis."). The regulatory definition does not require that the individual be exclusively, or even predominantly, motivated by "civic, charitable, or humanitarian reasons"; therefore, the Court understands this phrase to be modified by an implied "at least in part."

Individual motivations have been a source of continual reflection and commentary throughout human history. We seek the "why" behind the "what" in order to understand, evaluate, and reconcile the actions of others. The individual motivations of the plaintiffs in this case have generated a similar inquiry. A person's subjective motivations are by their very nature difficult for an outsider to determine. In this case, the Court must rely upon an evaluation of the plaintiffs' statements, attitudes, and outward manifestations regarding their motivations, as well as any other available objective indicia that indicate whether a volunteer or employment relationship was contemplated by the parties. *See Rodriguez*, 866 F.Supp. at 1020 (declining to find plaintiff was a volunteer for summary judgment purposes because "objective indicia" existed "suggesting that an employment rather than a volunteer relationship was contemplated by the parties.").

■ Furthermore, the Court understands the regulatory definition to incorporate a standard of reasonableness. For instance, a person who performs services in the face of a regulation or stated policy that specifies that such services will be unpaid, yet who nevertheless persists in

"expecting" to receive compensation, should not be permitted to satisfy the definition of "employee" simply by unreasonably insisting that he has a subjective expectation of receiving wages. The Court notes that there must be a point at which a person's subjective expectations and motivations are so unfounded and conjectural as to be insufficient to support a finding of reasonableness, and at this point the Court must rely on common-sense standards and objective indicia.

█ Here, plaintiffs uniformly concede in their depositions that they had no expectation of receiving pay for their continued performance of town duty hours; rather, what they hoped was that their eligibility to accept jobs-in-blue would be restored. Plaintiffs' deposition testimony demonstrates that they were motivated to continue performing town duty by a variety of factors:[4] 1) their hope that the SLEOs' eligibility to accept jobs-in-blue would be restored; 2) their belief that continuing or ceasing to perform town duty might have an impact on the restoration of their jobs-in-blue eligibility; 3) their desire to maintain their police training certification; 4) a sense of personal satisfaction and enjoyment derived from their performance of town duty; 5) a desire to "wait out" the Township by refusing to resign as SLEOs before being terminated.

Not all of these motivations may strictly qualify as "civic, charitable, or humanitarian" in nature. However, after taking into consideration the totality of the circumstances surrounding the plaintiffs' relationship with defendant, and viewing the facts in the light most favorable to plaintiffs as the non-moving party, the Court is convinced that plaintiffs constitute volunteers as a matter of law.

Plaintiffs were voluntarily performing civic duties for their community with the knowledge and understanding that they would not receive wages for their services. The Court recognizes that the SLEOs, who were willing to voluntarily undertake the potentially dangerous role of police officer "must be, at least to a considerable degree, motivated by an altruistic sense of civic responsibility." *See Krause,* 969 F.Supp. at 276 (observing same about volunteer firefighters). Plaintiffs were not the victims of "coercion" or "undue pressure." *See* 29 C.F.R. § 553.101(b). They performed town duty for various personal reasons, including a sense of satisfaction from helping their community and a persistent hope that they would again become eligible to accept the paid jobs-in-blue positions.[5] The fact that plaintiffs retained hope that their jobs-in-blue eligibility would be restored is not sufficient to take their services out of the common-sense realm of volunteer services, any more than a judicial intern's hope that her internship will lead to a profitable legal job negates the nature of her status as a volunteer.

Prior to October 2, 1995, the Township made available to the SLEOs a benefit to which they would otherwise not be entitled except by virtue of their volunteer status: the ability, along with regular Township police, to accept any jobs-in-blue work requested by private subscribers.[6] This benefit was not in any way guaranteed or

---

4. The Court recognizes that, in light of the Court's opinion in Todaro I, plaintiffs had an incentive to emphasize in their deposition testimony those motivating factors which would tend to argue against "civic, charitable, and humanitarian" concerns.

5. The plaintiffs' situation is similar to that of the plaintiffs in *Benshoff v. City of Virginia Beach,* 9 F.Supp.2d 610, 611 (E.D.Va.1998), in which paid firefighters sought overtime pay for serving additional time on volunteer rescue squads. The *Benshoff* court declined to

"allow firefighters seeking time and one-half their regular pay for volunteer work to eviscerate the spirit of volunteerism that has characterized the rescue squads ... for over 50 years." *Id.* at 624.

6. As an analogous situation, imagine that the YMCA/YWCA offers both its paid teachers and its volunteers the chance to respond to individual requests for paid, private swimming lessons.

promised to the SLEOs—in fact, it depended wholly on the needs of outside, private entities who required security services. The SLEOs' access to jobs-in-blue was made even more conditional by the fact that the regular police officers had priority in accepting jobs-in-blue. Finally, and perhaps most significantly, this benefit never involved any exchange of money, goods, or services between the Township and the SLEOs. In other words, although the SLEOs may have benefited from the jobs-in-blue, there was no corresponding detriment or cost to the Township.[7]

After October 2, 1995, the SLEOs continued performing town duty with genuine but unsubstantiated hopes that their access to that benefit would be restored. Occasional statements by Township officials that they would "look into matters" or that "we have to do something about this" never led to any tangible progress in restoring the SLEOs' jobs-in-blue eligibility. In fact, plaintiffs' testimony indicates that Township officials repeatedly refused to negotiate with Local 7, the SLEOs' unofficial and unrecognized bargaining unit, regarding jobs-in-blue eligibility. In a letter dated April 30, 1997, the mayor of the Township specifically informed Ross Todaro, as representative for the SLEOs, that the Township would not meet with Local 7. The SLEOs' hopes grew more remote, and thus less reasonable, with the passage of each of the twenty-seven months during which they persisted in hoping that their jobs-in-blue eligibility would be restored.

The applicable federal regulations specify that a volunteer may receive "reasonable" benefits from the agency for which

services are volunteered without losing his or her "volunteer" status. *See* 29 C.F.R. § 553.106(d). For instance, volunteers may receive uniform allowances, payment for meals and transportation costs, group health insurance, pension plans, and books, supplies, or other training materials. *See* 29 C.F.R. § 553.106(b), (c), (d).

■ The Court finds as a matter of law that the Township, in providing jobs-in-blue eligibility as a reasonable benefit to the SLEOs, did not invalidate the SLEOs' status as volunteers. It follows, therefore, that the SLEOs' tenuous hopes of regaining this benefit also do not serve to remove the SLEOs out of the category of volunteers.

It is human nature to assume, after consistently receiving a benefit over a period of time, that the benefit has converted itself into an entitlement. Every teenager who has received an allowance or supervisor who has permitted his employees to leave early on a Friday afternoon can attest to this.

The Court's clearer perspective in this situation, however, leads it to conclude that plaintiffs in the instant case have no legal recourse under the FLSA to satisfy their feeling of deprivation, but rather must content themselves with the fact that they gave their time and assistance with the laudable result of providing valuable services for their community.

## CONCLUSION

For the reasons stated above, defendant's motion for summary judgment on

---

7. In this respect, the instant case is distinguishable from the plaintiff's situation in *Haavistola v. Community Fire Co. of Rising Sun, Inc.*, 6 F.3d 211, 221 (4th Cir.1993). In *Haavistola*, the plaintiff received benefits directly from the defendant which resulted in a cost to the defendant, such as disability pension, survivors' benefits, group life insurance, and tuition reimbursement. *Id.* The Fourth Circuit concluded that it was a question for the jury whether such benefits "represent[ed] indirect but significant compensation, as

Haavistola contends, or inconsequential incidents of an otherwise gratuitous relationship, as the Fire Company argues." *Id.* at 221–222. On remand, a jury concluded that such benefits did not suffice to contravene plaintiff's status as a volunteer. *See Haavistola v. Community Fire Co. of Rising Sun*, 839 F.Supp. 372, 373 (D.Md.1994). In this case, the Court finds that the benefit of jobs-in-blue eligibility is so indirect and contingent that, as a matter of law, plaintiffs are not removed from the category of volunteers.

the first count of plaintiffs' amended complaint is hereby granted.

An appropriate Order is attached.

### ORDER

In accordance with the Court's Opinion filed herewith,

ORDERED that defendant's motion for summary judgment on the first count of plaintiffs' amended complaint is granted.