13-139-cv
Brown v. N.Y.C. Dep't of Educ.

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

———————

August Term, 2013

(Argued: November 12, 2013    Decided: June 18, 2014)

Docket No. 13-139-cv

———————

JAYQUAN BROWN,

*Plaintiff-Appellant*,

—v.—

NEW YORK CITY DEPARTMENT OF EDUCATION,
*and*
JOSHUA LAUB,

*Defendants-Appellees*.

———————

Before:

POOLER, RAGGI, AND WESLEY, *Circuit Judges*.

———————

On appeal from an award of summary judgment entered in the Southern

District of New York (Crotty, *J.*), plaintiff challenges the conclusion that, as a

matter of law, he worked at a New York City public high school as a public

1

agency volunteer rather than as an employee and, as such, was not entitled to minimum or overtime wages under the Fair Labor Standards Act of 1938, see 29 U.S.C. § 201 et seq.

AFFIRMED.

———————

CHINYERE OKORONKWO, ESQ., New York, New York, *for Plaintiff-Appellant*.

LARRY A. SONNENSHEIN AND KATHY H. CHANG, Of Counsel, for Michael A. Cardozo, Corporation Counsel of the City of New York, New York, New York, *for Defendants-Appellees*.

———————

REENA RAGGI, *Circuit Judge*:

Plaintiff Jayquan Brown appeals from a judgment entered on December 13, 2012, in the United States District Court for the Southern District of New York (Paul A. Crotty, *Judge*), in favor of defendants the New York City Department of Education ("DOE") and DOE principal Joshua Laub. The district court awarded DOE summary judgment on Brown's federal claim for relief under the Fair Labor Standards Act of 1938 ("FLSA"), see 29 U.S.C. § 201 et seq., concluding as a matter of law that Brown was not entitled to statutory minimum and overtime wages for the three years he worked at DOE's Banana Kelly High School

2

("Banana Kelly") because Brown had served as a public agency volunteer, not an employee. Declining to exercise supplemental jurisdiction, the district court also dismissed Brown's related New York Labor Law claim against Banana Kelly principal Laub without prejudice to Brown refiling in the state court. See Brown v. N.Y.C. Dep't of Educ., No. 12 Civ. 0035 (PAC), 2012 WL 6186496, at *8 (S.D.N.Y. Dec. 12, 2012).

In urging vacatur, Brown contends only that the district court erred in its "volunteer" determination. He does not otherwise challenge the district court's exercise of discretion in dismissing his state law claim against Laub. Because Brown's volunteer challenge fails on the merits for reasons explained in this opinion, we affirm the judgment in favor of defendants in all respects.

I. **Background**

We summarize the relevant facts supported by the record in the light most favorable to Brown, the party against whom summary judgment was awarded. See Northeast Research, LLC v. One Shipwrecked Vessel, 729 F.3d 197, 200 (2d Cir. 2013). In doing so, however, we note that where Brown's deposition testimony appears to conflict with his Rule 56.1 statement of undisputed facts, see Local Rules of the United States District Courts for the Southern and Eastern

3

Districts of New York, we rely on the facts in his Rule 56.1 statement.  See Gibbs ex rel. Estate of Gibbs v. CIGNA Corp., 440 F.3d 571, 578 (2d Cir. 2006) (stating that parties are bound by factual admissions made to court); see also Cohan v. Movtady, 751 F. Supp. 2d 436, 443 (E.D.N.Y. 2010) ("[P]arties are bound by their concessions in Rule 56.1 Statements.").

A.     Brown's Work at Banana Kelly

Jayquan Brown graduated in 2006 from DOE's New School for Arts and Sciences ("New School"), located in the South Bronx.  At that time, New School shared physical space with Banana Kelly so that Brown came to know staff at both schools.

Brown was unable to secure paid employment after graduation.  He did, however, assist his brother who was working as a group leader for younger students at an after-school program at C.S. 92.[1]  On a visit back to New School in or about October 2007, Brown mentioned his "mentoring" work at C.S. 92 to Daniel Jerome, Banana Kelly's director of student life.  Jerome asked Brown if he would be interested in mentoring students at Banana Kelly.  When Brown responded affirmatively, Jerome raised the matter with principal Laub.

---

[1] It is not clear from the record whether Brown's brother was paid for his work at C.S. 92.  Brown himself was not.

4

Laub determined that Brown lacked the higher education and personal criteria necessary for a paid staff position; nevertheless, Laub "bent some rules" to create what he described to Brown as a "volunteer internship." J.A. 467–68. At his deposition, Laub stated that he did this to advance Brown's career opportunities. Meanwhile, Brown has professed not to have "fully appreciate[d]" what was meant by the terms "intern" and "volunteer." Id. at 468. He acknowledged, however, that he was never required to provide any qualifications for employment at Banana Kelly and was never told by any school official that he would be paid for his work. Nor did Brown himself initially inquire as to compensation. Rather, he accepted Laub's offer in order (1) to build his résumé; (2) to model himself on Jerome, whom he admired; and (3) to be a person who could "stand up, and make a change, and show the kids that we do care." Id. at 547.

Brown worked at Banana Kelly from the fall of 2007 through December 2010.[2] He generally spent five days a week (and frequent Saturdays) at the school for approximately forty hours per week and, in 2009, also assisted during

[2] Brown was asked to stop coming to Banana Kelly when his verbal interaction with a freshman girl triggered a DOE investigation. See Brown v. N.Y.C. Dep't of Educ., 2012 WL 6186496, at *2. Those circumstances are not relevant to the challenged judgment and, therefore, warrant no further discussion in this opinion.

the summer session. Brown explained that Jerome told him he was needed five days per week; therefore, he did not think that he had any choice but to come in that frequently because "if I didn't, I would be letting him [i.e., Jerome] down, and I would be letting the school down." Id. at 595. Brown acknowledged that on the few occasions when he was absent, he was neither criticized nor disciplined.

Brown was initially assigned to Banana Kelly's "Intervention Team" ("I-Team"), a group of salaried employees tasked with student conflict resolution. On this team, Brown performed various duties associated with lunchtime supervision, detention, parent contact, and student escort. He also answered the telephone and handed out report cards and progress reports. Only in 2010 was Brown given any student mentoring responsibilities.

On various occasions, Brown asked Laub for a paid position. Laub generally responded negatively, citing budget constraints and Brown's lack of higher education. Laub did consider the possibility of offering Brown a part-time paid position and, on one occasion, told Brown that he would search the budget for the necessary money. Nothing materialized, however, and Brown has admitted that neither Laub nor Jerome ever told him that he was going to be paid

for his work. Nevertheless, Brown asserted that Laub and Jerome created an impression that money to pay him was forthcoming when, in 2010, Jerome informed the I-Team that Laub had applied for a $170,000 grant to support its work by, among other things, providing stipends for interns. Apparently, no grant was ever received. Meanwhile, when Brown inquired as to a paid position as a "school aide," Laub and Jerome encouraged him to seek such a position at another DOE school.

Brown did seek aide positions at other schools because he "wanted to get paid." Id. at 610. Further, in 2009, with a letter of recommendation from Jerome, Brown secured a paid part-time evening job with a security company.

From time to time—but on fewer than five occasions in total—Laub gave Brown cash in amounts ranging from $40 to $50, telling him that he was doing a great job and should keep up the good work. Brown testified that he did not know why Laub was giving him this money and did not think it was for his work. Meanwhile, Brown asserted that in recognition of his "working all day" without pay and doing a "great job," Jerome gave him $60 per week approximately 10 to 20 times, as well as occasional MetroCards and subway fare. Id. at 476. Both Laub and Jerome sometimes paid for Brown's meals.

7

B.    Procedural History

On January 4, 2012, Brown commenced this action against DOE, alleging a failure to pay him minimum and overtime wages as required by the FLSA. See 29 U.S.C. §§ 206(a), 207(a).  On March 19, 2012, he amended his complaint to sue Laub in his individual capacity for alleged violations of the New York Labor Law.  See N.Y. Lab. Law § 652 et seq.

On the parties' cross-motions for summary judgment, the district court granted DOE's motion, concluding as a matter of law from the totality of the circumstances viewed most favorably to Brown that Brown was a "volunteer, not an employee, as defined by the FLSA" and, therefore, without a claim to minimum or overtime wages.  Brown v. N.Y.C. Dep't of Educ., 2012 WL 6186496, at *8.

II.  **Discussion**

A.    Notice of Motion

At the outset, we note that Brown urges vacatur of the judgment in this case based on defendants' alleged failure to comply with the particularity requirements of the Federal Rules of Civil Procedure in moving for summary judgment.  See Fed. R. Civ. P. 7(b)(1)(B) (requiring motion to "state with

8

particularity the grounds for seeking the order"). Brown argues that defendants'

motion was deficient in omitting any mention of the FLSA in their notice of

motion and stating summarily that they sought dismissal of all claims.

Brown concedes that he failed to raise any notice objection in the district

court. Thus, the point is forfeited on appeal. See Oneida Indian Nation v.

Madison Cnty., 665 F.3d 408, 441 (2d Cir. 2011), cert. dismissed, 134 S. Ct. 1582

(2014). Nor do we identify any reason to exercise our discretion to review the

forfeited claim. Defendants' supporting memorandum of law, filed the same day

as their summary judgment motion, explained in detail the grounds for seeking

the requested relief. Thus, Brown cannot credibly claim that he did not have

notice of the grounds upon which defendants sought summary judgment. We

therefore proceed to discuss Brown's merits challenge to the award of summary

judgment.

B.    Summary Judgment on FLSA Claim

1.    Standard of Review

Brown argues that disputed issues of fact precluded the district court from

concluding as a matter of law that he worked at Banana Kelly as a public agency

volunteer, thereby exempting DOE from the FLSA's minimum and overtime

9

wage requirements. This court has not previously had occasion to consider the scope of the FLSA's public agency volunteer exception. Those of our sister circuits to have considered the question have concluded that whether an individual is a public service volunteer within the meaning of the FLSA is ultimately a question of law. See Mendel v. City of Gibraltar, 727 F.3d 565, 568 (6th Cir. 2013); Purdham v. Fairfax Cnty. Sch. Bd., 637 F.3d 421, 428 (4th Cir. 2011); Cleveland v. City of Elmendorf, Tex., 388 F.3d 522, 526 (5th Cir. 2004); see also Todaro v. Twp. of Union, 40 F. Supp. 2d 226, 228 (D.N.J. 1999). As with other issues arising under the FLSA, however, the answer to that ultimate legal question necessarily depends on record circumstances that can present disputed questions of fact. See Icicle Seafoods, Inc. v. Worthington, 475 U.S. 709, 714 (1986); Zheng v. Liberty Apparel Co., 355 F.3d 61, 76 (2d Cir. 2003). Accordingly, on review of a summary judgment award to a public agency, a court deciding whether a party was a public agency volunteer must view the record evidence in the light most favorable to the purported volunteer and draw all inferences and resolve all record ambiguities in his favor. See generally Lynch v. City of New York, 737 F.3d 150, 156 (2d Cir. 2013) (discussing standard of review on summary judgment generally), cert. denied, --- S. Ct. ----, 2014 WL 1052398 (May 27, 2014);

Dickerson v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010) (same). When we do that here on de novo review of the challenged judgment, we reach the same legal conclusion as the district court, i.e., that Brown was a public agency volunteer while working for Banana Kelly and, thus, exempt from the FLSA's minimum and overtime wage requirements.

### 2. The Relevant Statutes and Regulations

In explaining how we reach that conclusion, it is useful to begin with the relevant statutory and regulatory texts.

In enacting the FLSA in 1938, Congress required the payment of minimum and overtime wages to persons satisfying the statutory definition of "employee." See 29 U.S.C. §§ 203(e), 206(a), 207(a). While the term "employee" has been construed to reach expansively, see Dejesus v. HF Mgmt. Servs., LLC, 726 F.3d 85, 91 (2d Cir. 2013), cert. denied, 134 S. Ct. 918 (2014), the Supreme Court, in Walling v. Portland Terminal Co., 330 U.S. 148, 152 (1947), concluded that it does not reach individuals "who, without promise or expectation of compensation, but solely for . . . personal purpose or pleasure, worked in activities carried on by other persons either for their pleasure or profit." We need not, however, here decide how this ruling pertains to "volunteers," because, in 1985, Congress

11

specifically codified an FLSA exception for individuals who volunteer their services to public agencies—such as DOE—subject to two conditions:

> The term "employee" does not include any individual who volunteers to perform services for a public agency which is a State, a political subdivision of a State, or an interstate governmental agency, if--
> (i) the individual receives no compensation or is paid expenses, reasonable benefits, or a nominal fee to perform services for which the individual volunteered; and
> (ii) such services are not the same type of services which the individual is employed to perform for such public agency.

29 U.S.C. § 203(e)(4)(A).[3]

The FLSA does not itself define the term "volunteer" for purposes of this statutory exception. Rather, the Department of Labor ("DOL"), the agency charged with administering the statute, has done so through regulations.[4] These

---

[3] Because our decision here is based on a statutory exception to the FLSA for public agency volunteers, we express no view on FLSA issues that may be presented to this court in other cases respecting purported private sector volunteers.

[4] Congress specifically directed DOL to promulgate regulations to implement the statutory volunteer exception. See S. Rep. No. 99-159, at 14 (1985), reprinted in 1985 U.S.C.C.A.N. 651, 652 ("A new paragraph . . . is added to the FLSA to make clear that persons performing volunteer services for state and local governments should not be regarded as 'employees' under the statute. . . . The DOL is directed to issue regulations providing further guidance in this area."). Thus, the parties do not—and cannot—dispute that the regulations discussed in text are entitled to Chevron deference. See generally United States v. Mead Corp., 533 U.S. 218, 227 (2001) ("When Congress has 'explicitly left a gap for an agency to

regulations establish that to qualify as a "volunteer," a person performing services for a public agency must:

> (1) have a civic, charitable, or humanitarian purpose,
>
> (2) have not been promised or expect or receive compensation for the services rendered,
>
> (3) perform such work freely and without pressure or coercion, direct or implied, from the employer, and
>
> (4) not be otherwise employed by the same public agency to perform the same type of services as those for which the individual proposes to volunteer.

See 29 C.F.R. § 553.101(a), (c), (d).[5]

---

fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation,' and any ensuing regulation is binding in the courts unless procedurally defective, arbitrary or capricious in substance, or manifestly contrary to the statute." (quoting Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 843–44 (1984) (internal citation omitted))).

[5] Specifically, § 553.101(a) states: "An individual who performs hours of service for a public agency for civic, charitable, or humanitarian reasons, without promise, expectation or receipt of compensation for services rendered, is considered to be a volunteer during such hours." Section 553.101(c) further states: "Individuals shall be considered volunteers only where their services are offered freely and without pressure or coercion, direct or implied, from an employer." Finally, § 553.101(d) states: "An individual shall not be considered a volunteer if the individual is otherwise employed by the same public agency to perform the same type of services as those for which the individual proposes to volunteer."

To clarify the definition further, an additional regulation explains that "[v]olunteers may be paid expenses, reasonable benefits, a nominal fee, or any combination thereof, for their service without losing their status as volunteers." Id. § 553.106(a); see id. § 553.106(f) (stating that whether furnishing of expenses, benefits, or fees would result in loss of volunteer status under FLSA can only be determined by examining "total amount of payments made (expenses, benefits, fees) in the context of the economic realities of the particular situation"). "A nominal fee is not a substitute for compensation and must not be tied to productivity." Id. § 553.106(e); see id. (identifying following factors as relevant to determining if fee is nominal: "[t]he distance traveled and the time and effort expended by the volunteer; whether the volunteer has agreed to be available around-the-clock or only during certain specified time periods; and whether the volunteer provides services as needed or throughout the year"). Nevertheless, individuals who volunteer "to provide periodic services on a year-round basis may receive a nominal monthly or annual stipend or fee without losing volunteer status." Id. Moreover, individuals will "not lose their volunteer status because they are reimbursed for the approximate out-of-pocket expenses

incurred incidental to providing volunteer services, for example, payment for the cost of meals and transportation expenses." Id. § 553.106(b).

DOL regulations also state that the FLSA places "no limitations or restrictions . . . on the types of services which private individuals may volunteer to perform for public agencies." Id. § 553.104(a); see id. § 553.104(b) (citing as examples of volunteer service "assisting in a school library or cafeteria," working with "disadvantaged youth," and participating in "charitable or educational programs").

### 3. Applying the Volunteer Exception to this Case

In considering any exception to the FLSA's minimum and overtime wage requirements, we are mindful that because the statute is remedial, exemptions are to be narrowly construed against the employers seeking to assert them. See Reiseck v. Universal Commc'ns of Miami, Inc., 591 F.3d 101, 104 (2d Cir. 2010). In the case of the volunteer exception, however, we recognize, as DOL has, that "Congress did not intend" for the FLSA requirements to be construed "to discourage or impede volunteer activities undertaken for civic, charitable, or humanitarian purposes." 29 C.F.R. § 553.101(b). Rather, "its wish [was] to prevent any manipulation or abuse of minimum wage or overtime requirements

15

through coercion or undue pressure upon individuals to 'volunteer' their services." Id.

It is with these principles in mind that we consider whether the facts viewed most favorably to Brown demonstrate a genuine dispute as to his having been a public agency volunteer at Banana Kelly. While our ultimate determination is based on the totality of circumstances, see Irizarry v. Catsimatidis, 722 F.3d 99, 104 (2d Cir. 2013), cert. denied, 134 S. Ct. 1516 (2014), our discussion necessarily focuses on discrete facts relevant to particular statutory and regulatory criteria.

a.   The Required "Civic, Charitable, or Humanitarian" Purpose

Brown acknowledges that at least one of his goals in agreeing to work at Banana Kelly was "civic, charitable, or humanitarian," i.e., he wished to help high school students by showing that people like himself genuinely cared about them.  29 C.F.R. § 553.101(a); see supra at **[5]**.  Nevertheless, he contends that the regulation's purpose requirement is not satisfied here because a person must act solely for civic, charitable, or humanitarian purposes to qualify as a volunteer; a

16

person acting with mixed motives cannot qualify. The district court rejected this argument, and we do likewise.[6]

First, we note that the regulatory text does not support Brown's urged construction. It states that "[a]n individual who performs hours of service for a public agency for civic, charitable, or humanitarian reasons, without promise, expectation or receipt of compensation for services rendered, is considered to be a volunteer during such hours." 29 C.F.R. § 553.101(a). The language contains no qualifying modifier requiring "civic, charitable, or humanitarian reasons" to be "exclusive," "singular," or even "predominant."

Second, Brown points to nothing in the legislative or regulatory history to suggest that either Congress or DOL intended to limit the volunteer exception to

---

[6] Among our sister circuits, the Fourth has also concluded that mixed motives do not preclude application of the volunteer exception. See Purdham v. Fairfax Cnty. Sch. Bd., 637 F.3d at 429; see also Todaro v. Twp. of Union, 40 F. Supp. 2d at 230 [D.N.J.]. The Fifth Circuit has avoided the issue by looking to the "objective facts" rather than the "personal motivations behind the provision of services" and concluding that "anyone who performs public services without the expectation of compensation, and with no tangible benefits for himself, is volunteering for civic, charitable and/or humanitarian reasons." Cleveland v. City of Elmendorf, Tex., 388 F.3d at 528–29. We need not here decide whether the statute permits a court to forego all inquiry into personal motivation because, in this case, Brown admits that he was subjectively motivated, at least in part, by civic, charitable, and humanitarian reasons. We thus discuss only why we reject Brown's argument that such a motivation must be singular to support the volunteer exception to the FLSA.

persons acting solely for civic, charitable, or humanitarian reasons. The 1985 Senate Report accompanying the amendments creating the volunteer exception states Congress's intent "[t]o make clear that persons performing volunteer services for state and local governments should not be regarded as 'employees' under the [FLSA]." S. Rep. No. 99-159, at 14 (1985), reprinted in 1985 U.S.C.C.A.N. 651, 652. Further, it specifically disavows an "inten[t] to discourage or impede volunteer activities undertaken for humanitarian purposes," not activities undertaken solely for humanitarian purposes, id.; accord Application of the Fair Labor Standards Act to Employees of State and Local Governments; Volunteers, 51 Fed. Reg. 13411 (proposed Apr. 18, 1986) (codified at 29 C.F.R. pt. 553) (stating that "key area of concern was the possibility that volunteer activities undertaken for humanitarian purposes would be discouraged or impeded by application of existing FLSA law and regulations"). Moreover, the regulations do express a clear limiting intent, defined not by the volunteer's exclusivity of purpose, but, rather, by his free choice in providing services without payment. See 29 C.F.R. § 553.101(b)–(d).[7]

---

[7] The relevant subsections of § 553.101 state as follows:

> (b) Congress did not intend to discourage or impede volunteer activities undertaken for civic, charitable, or humanitarian purposes,

While we are obliged to construe the volunteer exception narrowly, that obligation does not contemplate the imposition of judicial limits not intended by either Congress or the implementing agency, particularly where those limits would further a result—discouraging or impeding volunteer services to public agencies—that Congress and the agency expressly disavow. In this respect, common sense and human experience inform our consideration of Brown's urged exclusive-purpose limitation. They instruct that human actions are frequently informed by multiple reasons. As Justice—then Judge—Cardozo aptly observed in a different context, "the springs of conduct are subtle and varied." De Cicco v. Schweizer, 221 N.Y. 431, 438 (1917). Thus, a person may provide a public agency with free services for genuine civic, charitable, or humanitarian reasons, at the same time that he acts for a variety of personal

but expressed its wish to prevent any manipulation or abuse of minimum wage or overtime requirements through coercion or undue pressure upon individuals to "volunteer" their services.

(c) Individuals shall be considered volunteers only where their services are offered freely and without pressure or coercion, direct or implied, from an employer.

(d) An individual shall not be considered a volunteer if the individual is otherwise employed by the same public agency to perform the same type of services as those for which the individual proposes to volunteer.

19

reasons, e.g., to secure community approbation, to make amends for unrelated wrongs, to fill idle time, to meet new people, or—as in Brown's case—to improve one's résumé. To exclude all services provided with such mixed motives from the public agency volunteer exception to the FLSA would undoubtedly discourage and impede a significant amount of public agency volunteering, contrary to Congress's intent. This we decline to do. Rather, we conclude that a person's mixed motives are simply part of the totality of circumstances properly considered by a court in making the final legal determination of whether a person is a public agency volunteer or an employee. See Irizarry v. Catsimatidis, 722 F.3d at 104.

Here, as already noted, Brown acknowledges that civic and humanitarian reasons sincerely (and significantly) informed his decision to work at Banana Kelly. That is sufficient to satisfy the purpose requirement of 29 C.F.R. § 553.101(a).[8] The fact that this unemployed, recent high school graduate hoped also to build his résumé and to emulate his role model does not legally preclude

---

[8] This case does not require us to decide whether even a trivial civic, charitable, or humanitarian reason satisfies the regulatory purpose requirement.

a court from finding him to have served as a public agency volunteer exempt from the FLSA's minimum and overtime wage requirements.[9]

Nor is a different conclusion warranted because Brown hoped to achieve his civic and humanitarian goals by mentoring students and, instead, was assigned to a team more focused on student discipline. The record convincingly demonstrates that such work also afforded Brown opportunities to serve his primary civic and humanitarian objective: showing students that there were people who cared about them. See 29 C.F.R. § 553.104(a) (recognizing that FLSA places no limits on types of services that volunteer may perform for public agencies). Thus, because nothing in the nature of Brown's work takes his services out of the statutory public agency volunteer exception, we adhere to our conclusion that the regulatory purpose requirement is satisfied in this case. See id. § 553.101(a); see generally id. § 553.104(b) (identifying as examples of volunteer services "assisting in a school . . . cafeteria," working with "disadvantaged youth," and participating in "educational programs").

---

[9] Velez v. Sanchez, 693 F.3d 308 (2d Cir. 2012), cited by Brown, is not to the contrary. There we held that motives in addition to an expectation of material gain did not preclude application of the FLSA. See id. at 328. We now hold that motives in addition to civic, charitable, and humanitarian ones do not preclude application of the statutory public agency volunteer exception to the FLSA.

### b.    Prohibition on Compensation

The regulatory definition of a public agency volunteer precludes the "promise, expectation, or receipt of compensation for services rendered." Id. § 553.101(a).  We discuss, in turn, Brown's contention that he satisfied, or at least raised triable issues of fact, as to each of the prohibited actions relating to compensation.

### (1)    Promise

Brown asserts that he raised a triable issue of fact regarding promised compensation through evidence that (1) Laub promised to "search the budget" for money to pay him, J.A. 620; and (2) Jerome informed him and others that Banana Kelly was applying for a grant that could be used, among other things, to fund a stipend for interns.  Like the district court, we conclude that these facts cannot admit a genuine dispute as to promised compensation.

Because the regulations do not define the term "promise" as used in § 553.101(a), we assume that the word bears its ordinary meaning:  "a declaration that one will do or refrain from doing something specified."  Webster's Third New International Dictionary 1815 (1986); see also Black's Law Dictionary 1332 (9th ed. 2009) (defining "promise" as "[t]he manifestation of an intention to act or

22

refrain from acting in a specified manner, conveyed in such a way that another is justified in understanding that a commitment has been made; a person's assurance that the person will or will not do something"). To the extent the statements cited by Brown made declarations or commitments sufficient to be deemed a "promise," that promise was not to pay Brown, but only to search the budget or to apply for a grant that might make payment possible. In short, before the outcome of the search was known or the grant received, no person would be justified in understanding that defendants had made a commitment to pay Brown.

(2)    Expectation

Brown submits that his professed subjective expectation of payment is sufficient to preclude finding him a public agency volunteer and that the district court erred in requiring him to demonstrate that his expectation was objectively reasonable. We disagree. To construe "expectation of payment" as Brown urges would allow individuals to wish themselves (however unreasonably) into being owed FLSA wages, despite the (reasonable) belief of public agencies that they were accepting volunteered services. This construction would impede volunteerism because public agencies, if placed at risk of owing FLSA back pay

23

based on persons' subjective expectations of payment, will be more reluctant to accept volunteered services. Thus, consistent with Congress's intent not to discourage or impede volunteering, we conclude that the term "expectation," as used in 29 C.F.R. § 553.101(a), is properly construed to contemplate an objectively reasonable expectation of compensation.[10]

In this case, the objective fact weighing most strongly in Brown's favor is his work history at Banana Kelly, which generally reflects 40-hour (and sometimes more) work weeks over more than three years. Few people voluntarily work such long hours for so extensive a period without expecting compensation. This case, however, presents the somewhat unusual circumstance of a recent high school graduate who, unable to find paid employment—with the exception of a part-time night job—decided to use his time constructively to help others and to build his résumé. His choice is commendable. But, like the district court, we conclude that the record does not admit a reasonable finding of an

---

[10] We have identified two district courts outside this circuit that have applied an objective reasonableness standard to an expectation of payment under the FLSA. See Palar v. Blackhawk Bancorporation, Inc., No. 4:11-cv-4039-SLD-JAG, 2013 WL 5366124, at *4 (C.D. Ill. Sept. 25, 2013) (holding plaintiff to be volunteer in part because he did not reasonably expect compensation for his activities (citing 29 C.F.R. § 553.101(a))); Todaro v. Twp. of Union, 40 F. Supp. 2d at 230–31 [D.N.J.] (stating that unreasonable expectation of compensation should not be allowed to defeat volunteer status under DOL regulations).

objectively reasonable expectation of compensation for the work done at Banana Kelly.

In his undisputed statement of facts, Brown acknowledged that, at the start, Laub told him that he would work as a "volunteer intern[]," explaining that meant he would "help out, but receive no pay." J.A. 467–68. Even if, as Brown asserted at his deposition, he "failed to fully appreciate" what this meant in all respects, id. at 468, he acknowledged no recollection of anyone ever telling him that he was going to get paid. Moreover, Brown's understanding that he would not be compensated for his services at Banana Kelly is evident from his repeated requests for a "paid position," requests generally met with negative responses based on his lack of a higher education and/or budget constraints. Insofar as Laub or Jerome represented that they would search the budget for money, or were seeking a grant, that might allow them to pay Brown, such forward looking statements as to future possibilities are not enough to support an objectively reasonable expectation of payment for work performed in advance of finding money in the budget or of receiving a grant, neither of which appears to have occurred here.

Accordingly, the record admits no genuine dispute as to a reasonable expectation of payment precluding application of the public agency volunteer exception in this case.

### (3) Receipt

Brown asserts that the cash and benefits that Laub and Jerome gave him demonstrate a receipt of compensation precluding volunteer status. Specifically, he contends that the amounts received were more than nominal, and that the district court erred in failing to apply an economic reality test to assess the significance of the payments at issue. These arguments implicate 29 C.F.R. § 553.106(a) ("Volunteers may be paid expenses, reasonable benefits, a <u>nominal</u> fee, or any combination thereof, for their service without losing their status as volunteers" (emphasis added)), and § 553.106(f) ("Whether the furnishing of expenses, benefits, or fees would result in individuals' losing their status as volunteers under the FLSA can only be determined by examining the total amount of payments made (expenses, benefits, fees) in the context of the <u>economic realities</u> of the particular situation" (emphasis added)).[11] Neither argument is persuasive.

---

[11] Also relevant are 29 C.F.R. § 553.106(e) (stating that nominal fees to volunteers cannot serve as "substitute for compensation" and must not be "tied to

First, Brown is mistaken in suggesting that there is a single "economic realities" test consisting of uniform factors that should have been applied in this case. As the text of § 553.106(f) itself makes plain, economic realities are assessed by reference to "the particular situation" with some factors more important than others depending on the FLSA question at issue and the context in which it arises. This court has, in fact, applied several variations of economic reality tests as best suited to particular situations. For example, to determine employer status, we have looked to economic realities such as (1) the power to hire and fire employees, (2) the ability to supervise and control employee work schedules or terms of employment, (3) authority over the rate and method of employee payment, and (4) the maintenance of employment records. See Carter v. Dutchess Cmty. Coll., 735 F.2d 8, 12 (2d Cir. 1984). To distinguish between employees and independent contractors, we have considered (1) the degree of control exercised by the employer over workers, (2) workers' own investment in a business and their opportunity for profit and loss, (3) the degree of skill and initiative required to perform the work, (4) the permanence or duration of the

productivity") and § 553.106(b) (stating that "individuals [do] not lose their volunteer status because they are reimbursed for the approximate out-of-pocket expenses incurred incidental to providing volunteer services, for example, payment for the cost of meals and transportation expenses").

27

working relationship, and (5) the extent to which the work is integral to the employer's business.  See Brock v. Superior Care, Inc., 840 F.2d 1054, 1058–59 (2d Cir. 1988).  More recently, in Velez v. Sanchez, 693 F.3d 308, 329–31 (2d Cir. 2012), we employed factors from both these tests to determine whether an individual was a domestic service worker or a household member, considering (1) the employer's ability to hire and fire the individual, (2) the method of recruitment or solicitation, (3) the employer's ability to control terms of employment such as hours and duration, (4) the presence of employment records, (5) the expectations or promises of compensation, (6) the flow of benefits from the relationship, and (7) the history and nature of the parties' relationship aside from domestic labor.  More important, Velez clarified that an economic realities test is not "confined to a narrow legalistic definition" but, rather, looks to all circumstances relevant to the matter in issue.  Id. at 330 (internal quotation marks omitted).

We understand the district court correctly to have assessed Brown's claimed receipt of compensation by reference to all relevant economic realities. In any event, Brown's argument to the contrary merits little discussion because, on de novo review, we make such an assessment ourselves.  In so doing, we

28

conclude that economic realities such as an employer's ability to hire and fire, to supervise and control, and to maintain records provide little assistance here in deciding whether the cash and benefits Brown received constituted compensation for his services at Banana Kelly. Nor do such factors reveal whether Brown's status was that of an employee or a volunteer, as they appear to apply equally to persons working in both capacities. Economic realities such as worker skill level, initiative, and integrality in an employer's business are also unhelpful here in distinguishing between employees and volunteers as these factors can often weigh the same for both.

More probative are the permanence and duration of a working relationship. As already noted, it is unusual for a person to provide uncompensated services for 40-hour weeks over the course of years. Thus, this economic reality warrants careful consideration in assessing whether the cash and benefits given to Brown constituted compensation. Also relevant, however, are the history and nature of the parties' relationship. Here Laub and Jerome, in their capacities as professional educators, had known Brown as a high school student. Upon learning that this recent graduate was unemployed, and recognizing the difficulty someone with his modest skills would have securing a

29

paid position, they offered him an unpaid internship, an opportunity that Brown himself recognized would help build his résumé. In this respect, the parties' relationship was not that of a typical employer/employee but, rather, retained some of the mentoring features of educator/student. This factor also warrants careful consideration in assessing whether the cash and benefits these two men gave Brown constituted compensation.

As for the employer's ability to determine the rate and method of payment, this factor is here superseded by a more probative inquiry: Was the payment given, by whatever method, more than nominal? If it was, the payment is appropriately deemed compensation, precluding a volunteer determination. If the payment was only nominal, however, DOL regulations instruct that the recipient can still qualify as a volunteer. See 29 C.F.R. § 553.106(a).

Brown asserts that the cash and benefits given to him by Laub and Jerome cannot be deemed nominal when viewed against the "economic reality" of his almost impoverished condition. Specifically, he contends that he "counted on" the cash, subway fare, and lunches provided to cover his "transportation expenses" to and from Banana Kelly and "to pay for personal expenses." J.A. 444. In support, he notes that in Velez v. Sanchez, we held that the provision of

minimal "dispensations" to a domestic worker did not preclude a finding that she was an employee under the FLSA where she was "dependent upon those benefits."  693 F.3d at 328.  Velez, however, is distinguishable in two important respects.  First, the alleged employer was a private person, not a public entity.  Thus, our assessment of the parties' employer/employee relationship in that case was not informed by the public agency volunteer exception codified in 29 U.S.C. § 203(e)(4)(A) and implementing DOL regulations.  Second, the minimal "dispensations" referenced in that case were provided along with room and board, circumstances that, in their totality, could not be said to reflect nominal payments.  See Velez v. Sanchez, 693 F.3d at 314; see generally Tony & Susan Alamo Found. v. Sec'y of Labor, 471 U.S. 290, 292, 301 (1985) (holding that workers were employees, not volunteers, where food, shelter, and other benefits upon which they were dependent constituted "wages in another form").

Here, even if we fully credit Brown's claims of indigence and reliance, the payments made to him cannot be considered more than nominal.  If, as Brown asserts, Laub gave him $40 to $50 on five occasions, and Jerome gave him $60 on 20 occasions, the cash received would total only $1450, an amount that, over approximately three years, can only be deemed nominal.  Although Laub and

Jerome sometimes accompanied these payments with expressions of appreciation for Brown's efforts and encouragement to keep up his hard work, this is not enough to tie the payments to Brown's productivity. See 29 C.F.R. § 553.106(e) (stating that nominal fee "must not be tied to productivity"); see also Purdham v. Fairfax Cnty. Sch. Bd., 637 F.3d at 434 (holding, as matter of law, that annual coaching stipend not tied to success or hours worked does not constitute compensation precluding application of volunteer exception). Indeed, nothing in the record indicates that Laub's or Jerome's cash payments were tied to the particular hours Brown worked or the performance goals he met.

As for the MetroCards, subway fares, and meals that Laub and Jerome sporadically provided to Brown, we conclude that such benefits constituted precisely the sort of expenses coverage permitted by 29 C.F.R. § 553.106(b) (stating that individuals do not lose "volunteer status because they are reimbursed for the approximate out-of-pocket expenses incurred incidental to providing volunteer services, for example, payment for the costs of meals and transportation expenses").

In sum, we conclude that, even when all relevant economic realities are viewed in the light most favorable to Brown, the cash and benefits he received

from Laub and Jerome cannot reasonably be deemed "compensation" so as to preclude application of the public agency volunteer exception to the FLSA's minimum and overtime wage requirements.

c.    Prohibition on Coercion

As we have already observed, see supra at [13], critical to identifying a person as a public agency volunteer for purposes of claiming an exception from the FLSA's minimum and overtime wage requirements is that the person offer his services "freely and without pressure or coercion, direct or implied, from an employer." 29 C.F.R. § 553.101(c). Brown argues that the record did not permit the district court to resolve this question as a matter of law in favor of defendants because his deposition testimony raised a genuine dispute of material fact about coercion. We disagree.

Brown testified that "[s]ometimes" he did not have a choice as to whether to come to work at Banana Kelly. J.A. 595. But as he himself acknowledged, this obligation was the result not of any coercion by defendants but of his own laudable sense of responsibility. Thus, when Jerome told Brown he needed him at the school from Monday through Friday, Brown said "Fine." Id. at 592. On days when Jerome told Brown that "we really, really need you," Brown thought

he had no choice but to come in because, otherwise, he would be "letting [Jerome] down, and . . . letting the school down." Id. at 595. Indeed, Brown rarely missed a day at Banana Kelly, but when he did, he acknowledged that he was not criticized, nor did he suffer any adverse consequences. See id. at 594–95. These circumstances admit no reasonable finding of coercion by Banana Kelly but, rather, particular conscientiousness by Brown in freely giving his services to the school and its students. Like the district court, we conclude that the voluntariness requirement of the public agency volunteer exception is established as a matter of law.

Indeed, for the reasons discussed, we conclude that the totality of record circumstances, even when viewed in the light most favorable to Brown, compels the legal conclusion that Brown rendered services at Banana Kelly as a public agency volunteer, thereby exempting DOE from the minimum and overtime wage requirements of the FLSA. Summary judgment was therefore properly entered in DOE's favor.[12]

---

[12] Because we affirm the district court's summary judgment award on the merits, we need not address defendants' argument that Brown's claim is barred in part by the statute of limitations.

## III.    Conclusion

To summarize, we conclude as follows:

1.    Because plaintiff did not challenge summary judgment in the district court based on defendants' failure to satisfy the notice requirements of Fed. R. Civ. P. 7(b), and because plaintiff cannot credibly claim lack of notice, we decline to review this forfeited claim.

2.    Whether a person qualifies as a public agency volunteer exempt from the minimum and overtime wage requirements of the FLSA, see 29 U.S.C. § 203(e)(4)(A), is a question of law that, on a summary judgment motion by the public agency, should be decided by the court based on the totality of circumstances viewed most favorably to the purported volunteer.

3.    The regulatory requirement that a public agency volunteer be motivated by "civic, charitable, or humanitarian reasons," 29 C.F.R. § 553.101(a), does not demand that such motivation be singular.

4.    Economic realities properly inform an assessment of various questions arising under the FLSA, including whether a person alleged to have been a public agency volunteer was promised,

reasonably expected, or received compensation. <u>See</u> <u>id.</u> No single economic realities test, however, applies to all FLSA questions. Rather, a court must identify, from the totality of circumstances, the economic (and other) factors most relevant to the issue in dispute.

5. In assessing a person's expectation of compensation for purposes of deciding whether he is a public agency volunteer, a court applies an objective reasonableness rather than subjective standard.

6. The record, even when viewed most favorably to Brown, compels the legal conclusion that he served at DOE's Banana Kelly High School as a public agency volunteer. Specifically, Brown was significantly motivated by civic, charitable, or humanitarian reasons in providing his services, at the same time that he acted for other personal reasons. The record does not admit a reasonable finding of promise, expectation, or receipt of compensation within the meaning of the FLSA. Nor is there a triable issue of fact as to Brown's services being provided other than freely and without coercion.

Accordingly, summary judgment of Brown's FLSA claim was correctly entered in favor of DOE, and the district court acted well within its discretion in dismissing Brown's New York Labor Law claim against Laub without prejudice to refiling in state court. The judgment of the district court is hereby AFFIRMED in all respects.