16-3302-cv
Wang v. The Hearst Corporation

# UNITED STATES COURT OF APPEALS

## FOR THE SECOND CIRCUIT

August Term, 2017

(Argued: September 11, 2017    Decided: December 8, 2017)

Docket No. 16-3302

- - - - - - - - - - - - - - - - - - -x

XUEDAN WANG, on behalf of herself and all others similarly situated, MATTHEW JORDAN WAGSTER, ERIN E. SPENCER, on behalf of herself and all others similarly situated, ALEXANDRA RAPPAPORT, SARAH WHEELS,

Plaintiffs-Appellants,

JESSICA ANN BEST, PAUL VANCE, COURTNEY HOLT, JANET E. GLAZIER, REBECCA E. DIXON, ERIN D. SULLIVAN, CARLY ROCKWELL, DANA LYNN VOGEL, ELIZABETH MANCINI, STEPHANIE LAUREN SKORKO, CAITLIN LESZUK,

Plaintiffs,

- v.-

The Hearst Corporation,

Defendant-Appellee.

- - - - - - - - - - - - - - - - - - -x

Before:        JACOBS, CABRANES and WESLEY, <u>Circuit Judges</u>.

Five participants in Hearst Corporation internship programs appeal from the order of the United States District Court for the Southern District of New York (Oetken, <u>J</u>.), dismissing on summary judgment their claims under the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq.  Affirmed.

Rachel Bien (Juno Turner, <u>on the brief</u>), Outten & Golden LLP, New York, New York, <u>for Plaintiffs-Appellants</u>.

Rachel Geman, Lieff Cabraser Heimann & Bernstein, LLP, New York, New York, <u>for amici curaie</u> American Federation of State, County and Municipal Employees; Communications Workers of America, AFL-CIO; Economic Policy Institute; Intern Worker Alliance; National Employment Lawyers Association; National Employment Law Project; Service Employees International Union; United Food and Commercial Workers International Union; Writers Guild of America, East, AFL-CIO; Professor Scott Moss; Ross Perlin; and Professor David C. Yamada, <u>in support of Plaintiffs-Appellants</u>.

Eve Burton, Jonathan R. Donnellan, Kristina E. Findikyan, Jennifer D. Bishop, Hearst Corporation, New York, New York, office, <u>for Defendant-Appellee</u>.

DENNIS JACOBS, <u>Circuit Judge</u>:

Five participants in internship programs offered by defendant Hearst Corporation ("Hearst") sue for minimum wage under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"). At issue is whether the unpaid interns were "employees" of Hearst for the purposes of the FLSA under <u>Glatt v. Fox Searchlight Pictures, Inc.</u>, 811 F.3d 528 (2d Cir. 2016). We affirm the judgment of the United States District Court for the Southern District of New York, <u>Wang v. Hearst Corp.</u>, 203 F. Supp. 3d 344 (S.D.N.Y. 2016), for the reasons stated in Judge Oetken's thorough opinion.

**I**

The question is whether Hearst furnishes bona fide for-credit internships or whether it exploits student-interns to avoid hiring and compensating entry-level employees. The factual record is voluminous and advances multiple narratives, some of them contradictory; but the following essentials are undisputed.

Hearst maintained dozens of internship programs with its various print magazines. Each of five named appellants worked at one time as interns in one of these programs. These internships were unpaid, carried no expectation of eventual full-time employment, and required intern candidates to receive prior approval for college credit to participate. No intern alleges that Hearst promised compensation or a future job.

The interns' individual experiences varied, but there are groupings. Four of the appellants–Alexandra Rappaport, Erin Spencer, Matthew Wagster, and Sarah Wheels–were enrolled in college during their internships. Rappaport, Spencer, and Wheels completed their internships during the summer between academic years, and Wagster interned (with *Esquire*) during his fall semester. Lead plaintiff Xuedan Wang interned for one semester between her graduation from college and the start of her graduate program in the Fashion Marketing program at Parsons School of Design. Each intern received prior approval for

college credit, although not all of them ultimately received credit from their degree-awarding institution: Wang had received permission for continuing education credit but ultimately did not pursue it, Wagster was denied credit from his institution because his internship was not applicable to his major, and Wheels received credit from a local community college.

Each student had an academic or aspiring professional connection to fashion. Wang and Spencer studied fashion in college, and Spencer's internship satisfied a graduation requirement (the Fieldwork course) for his major; Rappaport and Wagster were majoring in the social sciences, but hoped to break into the fashion industry; Wheels was an English major who interned in the editorial department of *Cosmopolitan* to advance her writing career. All of them testified or declared that they performed a range of tasks related to their professional pursuits in the Hearst internship programs, and gained valuable knowledge and skills. See, e.g., J. App'x 148 (Rappaport gained knowledge "vital" to a fashion career and accomplished her goal of receiving "a real-life experience"), id. at 748-751 (Spencer had "a very valuable learning experience"), id. at 775-76 (Wang's internship was a "rich and well-rounded learning experience" providing "unrivaled skills").

At the same time, the interns share common complaints. They describe many tasks in Hearst's fashion closets as menial and repetitive. Several claim that they did not receive close supervision or guidance and that the internships offered little formal training--in contrast to their academic experiences in school. One common grievance was that the interns mastered most of their tasks within a couple weeks, but did the same work for the duration of the internship.

In February 2012, lead plaintiff Xuedan Wang filed suit alleging that she and a putative class of interns across Hearst's magazine departments were deprived of wages in violation of the FLSA and NYLL. Seven other interns opted in after the district court granted the case collective certification. The district court's denial of plaintiffs' motion for partial summary judgment was vacated in this Court for reconsideration in light of Glatt v. Fox Searchlight Pictures, Inc., which was heard in tandem with Wang. Wang v. Hearst Corp., 617 F. App'x 35 (2d Cir. 2015) (summary order).

4

Hearst moved for summary judgment against the six remaining plaintiffs under the Glatt test. The district court granted the motion, and five plaintiffs filed a timely appeal. We review *de novo* a district court's grant of summary judgment. Mathirampuzha v. Potter, 548 F.3d 70, 74 (2d Cir. 2008).

**II**

The FLSA defines "employee" by tautology: an "individual employed by an employer." 29 U.S.C. § 203(e)(1). The standard for "employee" is broad, but the Supreme Court has long recognized that not every individual who performs a service for an employer qualifies as an "employee" under the FLSA. See Walling v. Portland Terminal Co., 330 U.S. 148, 149-53 (1947). "[E]mployee" status depends upon the "economic reality" of the relationship between the putative employer and employee. Glatt, 811 F.3d at 534, 536.

Last year in Glatt, we recognized the "primary beneficiary" test as the way to distinguish employees from bona fide interns. Id. at 536. To guide our "flexible" analysis, we provided seven non-exhaustive considerations specific to the context of unpaid internships:

> 1. The extent to which the intern and the employer clearly understand that there is no expectation of compensation. Any promise of compensation, express or implied, suggests that the intern is an employee—and vice versa;
>
> 2. The extent to which the internship provides training that would be similar to that which would be given in an educational environment, including the clinical and other hands-on training provided by educational institutions;
>
> 3. The extent to which the internship is tied to the intern's formal education program by integrated coursework or the receipt of academic credit;

5

4. The extent to which the internship accommodates the intern's academic commitments by corresponding to the academic calendar;

5. The extent to which the internship's duration is limited to the period in which the internship provides the intern with beneficial learning;

6. The extent to which the intern's work complements, rather than displaces, the work of paid employees while providing significant educational benefits to the intern;

7. The extent to which the intern and the employer understand that the internship is conducted without entitlement to a paid job at the conclusion of the internship.

Id. at 536-37.

The court applies these considerations by weighing and balancing the totality of the circumstances. Id. at 537; Barfield v. N.Y.C. Health & Hosps. Corp., 537 F.3d 132, 141-42 (2d Cir. 2008)(Employee status is a "flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances."). "No one factor is dispositive and every factor need not point in the same direction for the court to conclude that the intern is not an employee." Glatt, 811 F.3d at 537.

The totality of the circumstances should be considered in view of the "purpose of a bona fide internship ... to integrate classroom learning with practical skill development in a real-world setting." Id. In a break from previous tests, courts applying Glatt have acknowledged that the internship may provide a direct benefit to the employer so long as the intern receives identifiable educational or vocational benefits in return. See, e.g., Mark v. Gawker Media LLC, 2016 WL 1271064, at *8 (S.D.N.Y. Mar. 29, 2016).

Judge Oetken analyzed each Glatt factor and determined that all of them except the sixth (displacement of paid employees) either favored Hearst to some degree or were neutral. Wang, 203 F. Supp. 3d at 354-55. In assessing the totality

of the circumstances, the court concluded that the "Plaintiffs were interns rather than employees as a matter of law." Id. at 355.

## III

### A. Factors One and Seven

The appellants concede that factors one and seven (expectation of payment and entitlement to a job, respectively) favor Hearst. They argue, however, that these factors bear little weight because FLSA rights cannot be waived. The interns' reading of these factors defies the clear mandate of Glatt, which explained that "[a]ny promise of compensation, express or implied, suggests that the intern is an employee--*and vice versa*." 811 F.3d at 537 (emphasis added). These factors are crucial to understanding the "economic reality" of the internship relationship; where, as here, the programs were described specifically as unpaid internships for students–and students applied to the internships with that unambiguous understanding–the relationship is far less likely to take on an abusive quality.

### B. Factors Two and Five

The second factor (training) is at the heart of the dispute on appeal. The interns argue forcefully that Judge Oetken misconstrued this factor by broadening the ambit of "training" to include "practical skills." See, e.g., Wang, 203 F. Supp. 3d at 355. Wagster contends that the experience of having "s[a]t in on marketing meetings" should have been discounted by his assignment to "take meeting minutes." Similarly, appellants argue that we should disregard Spencer's experience "learn[ing] about photo shoots" because she already knew how to use a camera. The interns would thus limit the discussion of beneficial training under the second factor to education that resembles university pedagogy to the exclusion of tasks that apply specific skills to the professional environment.

Appellants' interpretation ignores our instruction in Glatt that a key element of the intern relationship is "the expectation of receiving educational *or*

7

*vocational benefits*."  811 F.3d at 536 (emphasis added); see also id. at 537 ("the purpose of a bona-fide internship is to integrate classroom learning with practical skill development in a real-world setting").  Glatt clearly contemplates that training opportunities offered to the intern include "product[s] of experiences on the job."  Id. at 536; accord Gawker Media LLC, 2016 WL 1271064, at *9 ("Plaintiffs take too narrow a view of [factor two], which includes the equivalent of 'clinical and other hands-on training'") (quoting Glatt, 811 F.3d at 537).  The appellants' tacit assumption is that professions, trades, and arts are or should be just like school; but many useful internships are designed to correct that impression.

The interns argue that the district court "ignored" evidence that Hearst's internships were a poor substitute for classroom learning.  In fact, the court accepted the complaints as true, and for that reason, concluded that the factor weighed only "slightly" in favor of Hearst.  At the same time, it recognized that those complaints do not wholly offset the undisputed fact that the internships *did* provide beneficial training.  Accord Lucia Vlad-Berindan v. NYC Metro. Transp. Auth., 2016 WL 1317700, at *7 (S.D.N.Y. Apr. 1, 2016).  For this reason, the appellants also misread the closely related fifth Glatt factor (valuable duration) in arguing that the interns were not receiving "beneficial learning" when they performed repetitive or similar tasks they had already "learned."  As exemplified by the meeting minutes and photoshoots, practical skill may entail practice, and an intern gains familiarity with an industry by day to day professional experience.  See, e.g., J. App'x at 743-45 (accruing "good life skills" by repeating administrative and organizational tasks such as "how to be more organized and focused" in a professional environment); see also Gawker Media LLC, 2016 WL 1271064, at *10 (independent work an repetitive tasks not "incompatible with the account of vocational training and mentorship" identified elsewhere in the record).

C.  Factors Three and Four

The third and fourth Glatt factors relate to the integration of the internship to the student-intern's academic program and academic calendar, respectively.  Both parties and the district court acknowledge that the interns' experiences

8

diverge with respect to these factors.  In general, however, the internships were arranged to fit the academic calendar and required academic credit as a prerequisite.

Factor three (academic integration) clearly favors Hearst for all interns except Wagster.  For some interns, the connection is straightforward.  Spencer's internship was a graduation requirement for his major.  Wheels' internship with the editorial department of a magazine meshed with her academic major in English and professional interest in writing.  And while Rappaport's internship did not "integrat[e]" with "coursework" from her international relations major, she discussed the internship with her college faculty, wrote a paper about it, and received class credit for it: her college thus treated the internship as a course.

It is argued that "there was no connection between a formal education program and Wang's internship" in the fashion industry.  Appellants' Br. at 37.  But Wang interned between the completion of her undergraduate degree in fashion and the start of her graduate degree, also in fashion.  She intentionally deferred her start date for graduate school and took a full time internship at a Hearst magazine to gain professional experience.  A jury is not necessary to infer from these undisputed facts that Wang's internship "is tied to [her] formal education."  Glatt, 811 F.3d at 537.  That Wang did not receive credit does not undermine the connection between her formal education program and her internship; she did not receive credit because she did not pursue it.  As a matter of law, the (undisputed) fact that the program required a student to earn approval from an accredited university for the "receipt of academic credit" generally is more telling than whether credit was actually awarded in that individual's case.[1]

---

[1]Wagster's circumstances differ because he was denied credit specifically "due to a reevaluation of the educational value of the internship," indicating a frayed connection between his internship and formal academic program.  Appellee's Br. at 28; see J. App'x at 399.  Pre-approval for credits paired with subsequent withholding of those credits on a substantial basis would make the third factor at least neutral as to Wagster, if it does not outright favor him.

For the majority of the interns here, the undisputed evidence also favors Hearst with respect to the fourth factor (academic calendar). Rappaport, Spencer, and Wheels interned during their college summer breaks in accordance with the school calendar. Wang had deferred her studies to intern between school years, and Wagster was not an active student during his internship. Hearst did not fail to accommodate their academic schedules when they had no schedules to accommodate.

D. Factor Six

The sixth factor (displacement) considers the extent to which an intern's work complements the work of paid employees or displaces it. An intern's work is complementary if it requires some level of oversight or involvement by an employee, who may still bear primary responsibility. The district court considered that the sixth factor favored the interns because the interns completed some work regularly performed by paid employees.

This factor alone is not dispositive. An intern may perform complementary tasks and in doing so confer tangible benefits on supervisors. The Glatt factors intentionally omitted a criteria that had been advanced by the Department of Labor that the alleged employer derive no immediate advantage from the activities of the intern. Glatt, 811 F.3d at 534. It is no longer a problem that an intern was useful or productive. See also Gawker Media, 2016 WL 1271064, at *12-13.

## IV

The facts of this case permit inferences that support Hearst with respect to certain Glatt factors, and inferences that support particular interns with respect to other factors. The interns and amici urge that such mixed inferences foreclose a ruling on summary judgment.[2] We disagree, for the reasons explained by the

[2]Many of our FLSA tests that are fact-sensitive and require the judge to assign weight are routinely disposed of on summary judgment. See Hart v. Rick's Cabaret Intern., Inc., 60 F. Supp. 3d 447, 456-57 n. 5 & 6 (S.D.N.Y. 2014);

district court, which weighed all factors under the totality of the circumstances, and concluded that the interns are not "employees" for the purposes of the FLSA.

As the interns observe, these cases do involve a "fact specific" and case-by-case analysis. But "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)(emphasis omitted); see, e.g., Gawker Media LLC, 2016 WL 1271064, at *9 ("There are no genuine issues of *material* fact–that is, issues that could change the Court's calculus if resolved in favor of [the intern] at trial."). Status as an "employee" for the purposes of the FLSA is a matter of law, and under our summary judgment standard, a district court can strike a balance on the totality of the circumstances to rule for one side or the other. See Glatt, 811 F.3d at 537 ("every factor need not point in the same direction *for the court* to conclude that the intern is not an employee")(emphasis added); Brock v. Superior Care, Inc., 840 F.2d 1054, 1058-59 (2d Cir. 1988).

There are contested issues that bear on the quality of each intern's experience. The crucial point is that a district court may rule on summary judgment if it can weigh the Glatt factors on the basis of facts that are not in dispute. As the district court recognized, the internships "involved varying amounts of rote work and could have been more ideally structured to maximize their educational potential," but concluded that these critiques did not give rise to a material factual dispute. Wang, 203 F. Supp. 2d at 355; accord Lucia Vlad-Berindan, 2016 WL 1317700, at *7-8 (approving a motion to dismiss recommendation with two factors in intern's favor "outweighed" by other five);

---

Meyer v. U.S. Tennis Ass'n, 607 F. App'x 121 (2d Cir. 2015)(summary order reflecting settled law). The amici contend that summary judgment is inapposite in all unpaid intern cases that turn on competing factors. Such a rule would foreclose weighing of undisputed facts in this commonplace fashion.

11

Gawker Media LLC, 2016 WL 1271064, *11 (granting summary judgment while acknowledging that "contrary evidence" existed in the record and the sixth factor favored the intern).

## CONCLUSION

The judgment is affirmed.